JOHN L. SMAHA, ESQ. [SBN 95855]
GUSTAVO E. BRAVO, ESQ. [SBN 218752]
Smaha Law Group, APC
2398 San Diego Avenue
San Diego, CA. 92110
Phone: (619) 688-1557
Fax: (619) 688-1558
E-mail: jsmaha@smaha.com

Attorneys for DANA AARON LINETT

THOMAS B. GORRILL, ESQ. [SBN 102979]
Law Office of Thomas B. Gorrill
401 West "A" Street, Suite 1770
San Diego, CA 92101
Phone: (619) 237-8889
eFax:    (619) 330-2125
E-mail: tom@gorrilllaw.com

Attorney for BARBARA LINETT

## UNITED STATES BANKRUPTCY COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re:<br><br>DANA AARON LINETT, dba EARLY AMERICAN NUMISMATICS,<br><br>Debtor(s) | CASE NO.   19-05831-LA11<br><br>Chapter 11<br><br>JOINT LIQUIDATING PLAN OF REORGANIZATION |

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]

1
2
3
4
5

## **TABLE OF CONTENTS**

6  I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
7  II.  DEFINITIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
8      A.  Definitions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
9      B.  Interpretation, Rules of Construction, Computation of Time . . . . . . . . . . . . . . . . . . . .  6
10         1.  Defined Terms . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
11         2.  Rules of Interpretation . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6
12  III.  CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS . . . . . . . . . . . . .  7
13      A.  General Overview . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
14      B.  Unclassified Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
15         1.  Administrative Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
16         2.  Priority Tax Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10
17      C.  Classified Claims and Interests . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
18  IV.  TREATMENT OF MISCELLANEOUS ITEMS . . . . . . . . . . . . . . . . . . . . . . . . .  16
19      A.  Executory Contracts and Unexpired Leases . . . . . . . . . . . . . . . . . . . . . . . . .  16
20      B.  Bar Date for Rejection Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16
21      C.  Insurance Policies . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17
22  V.  MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN . . . . . . . . . . . . . .  17
23      A.  Implementing Actions In General; Conditions to the Effective Date . . . . . . . . . . . . .  17
24      B.  Debtor's Authority . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
25      C.  Liquidating Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
26         1.  Effectiveness of the Liquidating Trust . . . . . . . . . . . . . . . . . . . . . . . .  19
27         2.  Beneficiaries . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19
28         3.  Implementation of the Liquidating Trust . . . . . . . . . . . . . . . . . . . . . . . .  19

4. Transfer of Debtor's Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

5. Vesting of Assets . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

6. Funding of the Liquidating Trust . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

7. No Liability of Liquidating Trustee or His Agents . . . . . . . . . . . . . . . . . 21

8. Funding of the Liquidating Trust's Liquidating Trust Expenses . . . . . . . . . . . 22

D. The Representative for the Estate . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

E. Provisions Governing Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

1. Disbursing Agent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

2. The Source of Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

3. Distribution Dates . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

4. Manner of Cash Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

5. Setoff and Recoupment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

6. No *De Minimis* Distributions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

7. Fractional Cents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

8. No Distributions with Respect to Disputed Claims . . . . . . . . . . . . . . . . . 25

9. Undeliverable or Unclaimed Distributions . . . . . . . . . . . . . . . . . . . . . . 25

10. Record Date . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

F. Disbursement of Remaining Liquidating Trust Assets . . . . . . . . . . . . . . . . . . . . . 26

VI. LITIGATION AND CLAIMS OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

A. Preservation of Rights of Action and Defenses . . . . . . . . . . . . . . . . . . . . . . . . . 26

B. Disputed Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

VII. EFFECT OF CONFIRMATION OF PLAN / OTHER PLAN PROVISIONS . . . . . . . . . . . . 29

A. Exculpation and Release of Plan Proponent and Her Professionals . . . . . . . . . . . . 29

B. Injunction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

C. Discharge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

D. Reversion of Property to the Debtor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

E. Remedy in Event of Default Under the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

F. Modification of Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]

G.  Quarterly Fees  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

H.  Post-Confirmation Conversion/Dismissal  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

I.  Retention of Jurisdiction  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  32

J.  Severability of Plan Provisions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34

K.  Entry of Final Decree  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  34


EXHIBIT A - IRREVOCABLE LINETT POOL TRUST AGREEMENT  . . . . . . . . . . . . . . . . _____

# I.

## INTRODUCTION

Dana Aaron Linett is the Debtor in a Chapter 11 bankruptcy case.  On September 30, 2019 (the "Petition Date"),  Mr. Linett ("Debtor", "Linett" and/or "Trustor") commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq. This document is the Chapter 11 Plan ("Plan") proposed jointly by Dana Aaron Linett and Barbara Linett, who is a secured creditor in this case (the "Plan Proponents").  Sent to you with this Plan is the Disclosure Statement which has been approved by the Court, and which is provided to help you understand the provisions of this Plan.

This is a liquidating plan.  In other words, the Plan provides that most of the Debtor's assets will be transferred to a Liquidating Trust (those assets being transferred to the Trust are otherwise known as the "Trust Assets") which, to the extent necessary, will liquidate the Debtor's Trust Assets, and the proceeds will be utilized to pay Allowed Claims pursuant to the terms of the Liquidating Trust and this Plan. All allowed Administrative Claims and Priority Claims against the Debtor will be satisfied in full. Subject to the terms of the Trust Agreement and as more fully provided hereafter, after payment of allowed Administrative Claims and Priority Claims and provision for the Liquidating Trust Expenses, and after the sale of assets encumbered by secured creditor claims in order to pay secured creditors, the remaining cash will be distributed pro-rata to holders of allowed General Unsecured Claims as further set out in the Trust Agreement. The Proponents believe, based upon the Debtor's values stated in his schedules, that there should be sufficient cash to pay a significant pro rata dividend, if not full payment, to General Unsecured Claims.  Thereafter, if all Allowed Claims have been paid in full, any remaining assets of the Liquidating Trust will be returned to the Debtor.  The Plan proposes to fairly and efficiently distribute the Debtor's Trust Assets.

# II.

## DEFINITIONS

### A. __Definitions__

In addition to such other terms as are defined in other Sections of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings in the Plan:

1    "**Allowed Claim**" means either (a) a Claim, as to which no proof of claim has been filed,

2    that is (i) listed in the Schedules in an amount greater than zero and not in an unknown amount and (ii)

3    not listed as disputed, contingent or unliquidated; or (b) a Claim as to which a proof of claim has been

4    filed and, in either case, to which (i) no objection or motion to estimate, equitably subordinate, reclassify,

5    set off, or otherwise limit the recovery thereon has been asserted before the expiration of the time period

6    to object to such claim as set forth in this Plan or order of the Bankruptcy Court or (ii) any objection or

7    motion to estimate, equitably subordinate, reclassify, or set off has been resolved by agreement between

8    the Creditor and the Liquidating Trustee or by Final Order of the Bankruptcy Court.

9    "**Assets**" means all assets of the Debtor's Estate including "property of the estate" as

10    described in section 541 of the Bankruptcy and shall, without limitation, include Cash, Causes of Action,

11    proceeds of insurance and insurance policies, all rights and interests, all personal property, and all files,

12    books and records of the Estate.  As provided herein below and in the Trust, not all Assets are being

13    surrendered to the Trust as Trust Assets.   Certain Assets, as provided for in the Trust, are abandoned

14    and/or surrendered to the Debtor by and through this Plan and the Trust.

15    "**Available Cash**" means any Cash held by the Liquidating Trust that is not designated

16    by the Liquidating Trustee as Cash to be used to satisfy Allowed Administrative Claims, Allowed

17    Priority Non-Tax Claims, and Liquidating Trust Expenses or otherwise subject to a reserve established

18    by the Liquidating Trustee.

19    "**Beneficiaries**" means the Holders of Allowed Claims who are the beneficiaries of

20    the Liquidating Trust.

21    "**Cash**" means all of the Debtor's cash or cash equivalents held by the Debtor or any

22    third party as of the Effective Date and all cash held by the Liquidating Trust after the Effective

23    Date.

24    "**Causes of Action**" means any and all claims, demands, rights, actions, suits, causes of

25    action, appeals, third-party claims, counterclaims and cross-claims of, or liabilities or obligations owing

26    to, the Debtor or the Estate, of any kind or character whatsoever, known or unknown, suspected or

27    unsuspected, whether arising prior to, on or after the Petition Date, in contract or in tort or otherwise,

28    at law or in equity or under any other theory (including, but not limited to, all claims in any avoidance,

recovery, subordination or other actions against any person under the Bankruptcy Code, including sections 510, 542, 543, 544, 545, 547, 548, 549, 550, 551 and 553), that the Debtor or the Estate has or asserts or may have or assert, (including, but not limited to, those actions listed in this Plan and the Disclosure Statement, whether or not brought as of the Effective Date or instituted by the Debtor or, after the Effective Date, by the Liquidating Trustee, acting for the Liquidating Trust, against any person based on law or equity, including, but not limited to, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted, known or unknown and which have not been settled or otherwise resolved by Final Order as of the Effective Date, including but not limited to, (1) rights of setoff, counterclaim or recoupment, and claims on contracts or for breaches of duties imposed by law, (2) the right to object to claims or interests, (3) such claims and defenses as fraud, mistake, duress and usury, (4) avoiding power causes of action, (5) claims to recover outstanding accounts receivable, and (6) any other claims which may be asserted against other persons or entities.

   **"Claim"** means a claim, as the term "claim" is defined in section 101(5) of the Bankruptcy Code, against the Debtor.

   **"Claims Objection Deadline"** means no later than six months after the Confirmation Date, which is the deadline for the Liquidating Trust, through the Liquidating Trustee, to file objections to Priority Claims and General Unsecured Claims as set forth herein.

   **"Distribution(s)"** means any transfer under the Plan of Cash or other property or instruments to a Holder of an Allowed Claim.

   **"Effective Date"** means the first Business Day after the date when all of the following have occurred:

     (i) the Confirmation Order shall have become a Final Order; provided, however, at the option of the Proponents, the Confirmation Order, if it is subject to a pending appeal or certiorari proceeding, may be considered a Final Order provided no court of competent jurisdiction has entered an order staying the effect of the Confirmation Order;

     (ii) the Liquidating Trust is final, executed, and approved and the Liquidating Trustee has been selected;

///

(iii) all actions, documents and agreements necessary to implement the Plan and the Liquidating Trust have been effected or executed; and

(iv) the Debtor will have received all authorizations, consents, rulings, opinions or other documents that are determined by the Proponents to be necessary to implement the Plan.

In no event shall the Effective Date occur more than ninety (90) calendar days following entry of the Confirmation Order, unless extended by ordered by the Bankruptcy Court.

**"Holder"** means the owner of a Claim against the Debtor, provided, however, with respect to transfers of Claims governed by Bankruptcy Rule 3001(e), in order for the transferor to be deemed the Holder of the Claim for distribution purposes, the deadline for any objection to the proposed transfer of a Claim must have passed with either (1) no objection to the transfer having been filed, or (2) any objection to such transfer having been resolved in favor of the transferor by no later than thirty days prior to the initial Distribution Date.

**"Liquidating Trust"** or **"Trust"** means the trust created under the Irrevocable Linett Pool Trust Agreement, a draft of which is attached hereto as Exhibit "A", subject to any changes made prior to Confirmation.  As provided herein, the terms of the Liquidating Trust are intended to control over any inconsistencies or discrepancies between this Plan and the Liquidating Trust.

**"Liquidating Trustee"** or **"Trustee"** means Thomas Hebrank of E3 Advisors.

**"Liquidating Trustee's Agents"** means, collectively, employees, agents, members, representatives, or professionals employed or retained by the Liquidating Trustee.

**"Liquidating Trust Assets"** or **"Trust Assets"** means any and all of the Debtor's Assets, including, but not limited to, Cash, Causes of Action, and other personal and real property that is property of the Debtor on the Effective Date which shall be transferred to the Liquidating Trust by the Debtor on the Effective Date, plus the Liquidating Trust Proceeds.  The Liquidating Trust Assets do not include those items listed in Schedule C of the Liquidating Trust, as defined herein.  The Liquidating Trust Assets shall be free and clear of any liens, claims or interests that might otherwise have existed in favor of any party, except as otherwise provided in the Plan, the Liquidating Trust or the Confirmation Order.

///

1    **"Liquidating Trust Expense(s)" or "Trust Expenses"** means all voluntary and

2    involuntary costs, expenses, charges, obligations, or liabilities of any kind or nature, including, but not

3    limited to, expenses that are unmatured, contingent, or unliquidated (collectively, the "Expenses")

4    incurred by the Liquidating Trust after the Effective Date until the Liquidating Trust is dissolved,

5    including, but not limited to: (i) the expenses of the Liquidating Trust incurred in connection with

6    administering and implementing the Plan; (ii) all fees that accrue after the Effective Date that are payable

7    to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6); and, (iii) the expenses of the Liquidating Trust

8    in making the Distributions required by the Plan, including paying taxes and filing tax returns.

9    **"Professionals"** means those Persons providing advisory or consulting services (i)

10    retained pursuant to an order of the Bankruptcy Court in accordance with sections 327, 1103 and/or 1106

11    of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date pursuant

12    to sections 327, 328, 329, 330 and 331 of the Bankruptcy Code or (ii) for which compensation and

13    reimbursement has been allowed by the Bankruptcy Court pursuant to sections 330 and 503(b)(2) of the

14    Bankruptcy Code.

15    **"Professional Fee Claim"** means a Claim under sections 327, 328, 330, 331, 503, or

16    1103 of the Bankruptcy Code for compensation for professional services rendered or expenses incurred

17    on the Estate's behalf; but not a Claim either under section 503(b)(4) of the Bankruptcy Code for

18    compensation for professional services rendered or under section 503(b)(3)(D) of the Bankruptcy Code

19    for expenses incurred in making a substantial contribution to the Estate, which is a Non-Ordinary Course

20    Administrative Claim and is subject to the Non-Ordinary Course Administrative Claim Bar Date.

21    **"Pro Rata"** means proportionately so that the ratio of (a) the amount of consideration

22    distributed on account of a particular Allowed Claim to (b) the amount of such Allowed Claim is the

23    same as the ratio of (x) the amount of consideration distributed on account of all Allowed Claims of the

24    class in which the particular Allowed Claim is included to (y) the amount of all Allowed Claims of that

25    class.

26    **"Residence"** means the Debtor's Residence located in Rancho Santa Fe, the exact

27    address of which is withheld for security reasons.

28    ///

**B.  Interpretation, Rules of Construction, Computation of Time**

**1.  Defined Terms**

Any term used in the Plan that is not defined in the Plan, but that is used in the Bankruptcy Code or Bankruptcy Rules has the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules, as applicable, unless the context requires otherwise.  Any term used in the Plan that is not defined in the Plan, but that is defined in the Liquidating Trust has the meaning assigned to that term in the Liquidating Trust.

**2.  Rules of Interpretation**

For purposes of the Plan:

a.  whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural;

b.  any payment required under the Plan on a particular date shall be made on such date or as soon thereafter as practicable;

c.  any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, delivered and filed on or before the Exhibit Filing Date as an exhibit to the Plan.  For purposes of this Plan, the Exhibit Filing Date shall be on the Effective Date except as agreed otherwise by the Plan Proponents;

d.  any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented through and including the Confirmation Date which, after they are filed, may be amended, modified or supplemented only with the express written consent of the Proponents;

e.  unless otherwise specified in a particular reference, all references in the Plan to sections, articles and exhibits are references to sections, articles and exhibits of or to the Plan;

f.  the words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan;

g.  captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan;

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]

6

h. all exhibits to the Plan and Plan Documents are incorporated herein, regardless of when those exhibits are filed;

i. to the extent any discrepancy exists between the description contained herein of a document or agreement that is an exhibit to the Plan and with the provisions of that exhibit, the actual agreement or document shall govern; and

j. the rules of construction set forth in section 102 of the Bankruptcy Code shall apply.

## III.

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### A. General Overview

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code. The Plan states whether each class of claims or interests is impaired or unimpaired. The Plan provides the treatment each class will receive under the Plan.

A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim and has not been paid, released, or otherwise satisfied before the Effective Date.

### B. Unclassified Claims

As provided by Section 1123(a)(1) of the Bankruptcy Code, certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class. The treatment of these claims is provided below.

#### 1. Administrative Claims

(a) Allowance of Administrative Claims. Administrative Expense Claims shall mean any right to payment constituting a cost or expense of administration of the Bankruptcy (other than a Fee Claim) allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without

1   limitation, any actual and necessary costs and expenses of preserving the Estate. Administrative

2   Expense claims may include the following: (a) expenses or liabilities incurred by the Trust in

3   maintaining, operating or liquidating Linett's Trust Assets and/or business operations after the Trust

4   comes into effect, including taxes generated by this Trust and/or taxes generated by the Estate under the

5   Plan; (b) Administrative Expense Claim(s) held by a trade vendor, which administrative liability was

6   incurred by Linett or the Trust in the ordinary course of business between Linett and/or the Trust and

7   such creditor on or after September 30, 2019 and prior to the Effective Date; or (c) fees of the United

8   States Trustee arising under 28 U.S.C. § 1930 allocable to periods on or after September 30, 2019. All

9   Claims described in clause (a), (b) and (c) of the immediately preceding sentence not paid by the Estate

10   in the ordinary course of business shall be paid by the Trust in the ordinary course of business from the

11   proceeds of the operation or liquidation of the Trust Assets.

12   (b) <u>Fee Claims</u>:  "Fee Claims" shall mean any right to payment constituting a cost or

13   expense of administration of the Bankruptcy and allowed under 11 USC §§ 330 or 503 of the Bankruptcy

14   Code and approved by the Bankruptcy Court.

15   (c) <u>Payment of Allowed Administrative Claims</u>.  To the extent allowed by the

16   Bankruptcy Code, Fee Claims shall be paid from the net proceeds of the sale of the Assets pro rata along

17   with any Administrative Expense Claims. Administrative Expense Claims and Fee Claims are identified

18   in the Plan as Unclassified Claims.  The Unclassified Claims include Fee Claims of the Smaha Law

19   Group, APC, Squar Milner (now known as Baker Tilly) and other Professionals that may have incurred

20   fees against the Estate.  Smaha Law Group, APC and Squar Milner/Baker Tilly have agreed to accept

21   payment in the ordinary course as Net Distributable Assets become available after the Effective Date of

22   the Plan to assist the Estate in complying with the requirements of 11 USC § 1129.  The Law Office of

23   Thomas Gorrill may also submit a Fee Claim under 11 USC § 503 and seek to be treated as an

24   Administrative Claim.  Any and all Fee Claims, except the US Trustee's fees, are subject to Bankruptcy

25   Court approval and any application objection process before becoming Allowed Claims.

26   ///

27   ///

28   ///

1         (d) <u>Administrative Bar Date</u>.

2             (i) <u>General Provisions</u>. Except as provided below for Professionals requesting

3 compensation or reimbursement for Fee Claims, requests for payment of Administrative Claims must

4 be filed no later than forty-five (45) days after the Effective Date or such later date as may be established

5 by order of the Bankruptcy Court. Holders of Administrative Claims who are required to file a request

6 for payment of such Claims and who do not file such requests by the Administrative Claims Bar Date,

7 shall be forever barred from asserting such Claims against the Debtor or their respective property, and

8 the holder thereof shall be enjoined from commencing or continuing any action, employment of process,

9 or act to collect, offset, or recover such Administrative Claim.

10             (ii) <u>Professionals</u>. All Professionals or other Persons requesting compensation or

11 reimbursement of Fee Claims for services rendered before the Effective Date (including compensation

12 requested by any Professional or other entity for making a substantial contribution in the Chapter 11

13 Case) shall file an application for final allowance of compensation and reimbursement of expenses no

14 later than forty-five (45) days after the Effective Date or such later date as may be established by order

15 of the Bankruptcy Court. All compensation and reimbursement of expenses allowed by the Bankruptcy

16 Court shall be paid by the Liquidating Trustee to the applicable Professional or other entities requesting

17 compensation or reimbursement of Fee Claims as soon as is practicable after any such Fee Claims are

18 Allowed to be paid from Net Distributable Assets as provided in the Liquidating Trust. For purposes

19 of the Plan and compliance with 11 U.S.C. Section 1129, Fee Claims and Administrative Claims do not

20 have to be paid on or before the Effective Date, these claims will be paid from Net Distributable Assets

21 as they become available. Persons holding Fee Claims who do not timely file and serve a fee application

22 will be forever barred from asserting those Claims against the Debtor, the Liquidating Trustee, or the

23 property of the Liquidating Trust, unless otherwise ordered by the Bankruptcy Court.

24             (iii) <u>U.S. Trustee Fees</u>. The Debtor or the Liquidating Trustee, as applicable, shall pay

25 all applicable U.S. Trustee Fees, in accordance with the terms of the Plan, until such time as the

26 Bankruptcy Court enters an order (a) dismissing the Chapter 11 Case, (b) converting the Chapter 11 Case

27 to a case under Chapter 7 of the Bankruptcy Code, or (c) approving a final decree closing the Chapter

28 11 Case.

## 2. Priority Tax Claims

Priority tax claims are certain unsecured income, business, and other taxes described by Code Section 507(a)(8). The Code requires each holder of a 507(a)(8) priority tax claim to receive (i) the total value, as of the Effective Date, equal to the allowed amount of such claim in cash, payable in installments made on an annual basis in accordance with section 1129(a)(9)© of the Bankruptcy Code, over a period not to exceed five (5) years following the Petition Date, plus statutory interest on any outstanding balance from the Effective Date, calculated at the prevailing rate under applicable nonbankruptcy law for each taxing authority and to the extent provided for by Section 511 of the Bankruptcy Code, and in a manner not less favorable than the most favored nonpriority General Unsecured Claim provided for by the Plan; or (ii) such other treatment as may be agreed upon by such holder.

Based upon the claims filed in the case, there are two priority tax claims:

**Franchise Tax Board** [priority income taxes] - $3,320.65 [Amended Claim 1] Note: The FTB also has a General Unsecured claim for $961.38.

**Internal Revenue Service** [priority income taxes] - $10,829.04 [Amended Claim 3] Note: The IRS also has a General Unsecured claim for $4,804.90.

Payments shall be made in equal, quarterly installments and each installment shall include simple interest accrued on the unpaid portion of such Claim at the rate provided for by 26 USC § 6621 or such similar California statute for the FTB's claim from and after the Effective Date; provided, however, that the Liquidating Trustee reserves the right to pay any Allowed Priority Tax Claim, or any remaining balance of such Allowed Claim, in full, at any time on or after the Effective Date without premium or penalty. Notwithstanding the foregoing, any Allowed Priority Tax Claims that were secured by property of the Debtor, if not paid upon the closing of the sale of any property that secures such secured Priority Tax Claim, shall be paid in full on the Effective Date or as soon thereafter as Net Distributable Assets are available to pay them after Administrative Claims and Fee Claims are paid. Priority Claims shall be paid within five (5) years of the Petition Date. As Priority Claims receive the treatment required under the Bankruptcy Code, these claims are deemed to be unimpaired and cannot vote on the Plan.

1    **C.  Classified Claims and Interests**

2    **Class 1.  Classes of Secured Claims**

3    Class 1 consists of the Secured Claims.  Each Claim that is a Secured Claim shall be deemed to

4    be classified in a separate sub-Class of Class 1.  Each such sub-Class of Class 1 shall be deemed to be

5    a separate Class under this Plan and, for purposes of voting on the Plan, each sub-Class shall be deemed

6    to be impaired and, therefore, each shall be entitled to vote on the Plan.

7    Secured Claims consist of any Claim secured by a Lien on any Asset of the Debtor, or right of

8    setoff, which Lien or right of setoff, as the case may be, is valid, perfected and enforceable under

9    applicable law and has not been avoided under the Bankruptcy Code or applicable nonbankruptcy law,

10   but only to the extent of the value, pursuant to section 506(a) of the Bankruptcy Code, of any interest

11   of the holder of the Claim in property of the Estate securing such Claim.  Each holder of an Allowed

12   Secured Claim is not conclusively presumed to accept the Plan under section 1126(f) of the Bankruptcy

13   Code and is therefore entitled to vote to accept or reject the Plan in its capacity as a holder of such

14   Claim.

15   **Real Estate Secured Claims:** The following are the Debtor's real property secured pre-petition

16   claims and their treatment under this Plan:

17   **Class 1A - Banco Popular, NA**.  This class is impaired.  The creditor will retain its lien and

18   priority on the collateral and the proceeds of sale until the creditor is paid, including unpaid interest and

19   attorney's fees as an oversecured creditor.  Upon the sale or refinance by the Trustee of the Residence,

20   the Secured Claim of Banco Popular North America, currently serviced by PHH Mortgage Corporation,

21   which is asserted as a secured claim in first position against the Residence, reflected by a first deed of

22   trust in the amount, provided in Proof of Claim 6, of $1,329,291.56 plus additional amounts accrued

23   during the pendency of the Bankruptcy, minus payments made during the Bankruptcy and allowed under

24   the Mortgage and Deed of Trust entered into between Opus Bank, as Banco Popular North America's

25   predecessor in interest, on the one hand and Barbara Linett and Dana Linett as Joint Tenants on the other

26   (the "Banco Popular Secured Claim - 1st Position" and/or "Class 1A") shall be paid in full from the net

27   proceeds of the sale after costs of sale are paid.

28   ///

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]                                    11

**Class 1B - US Bank, NA**.  This class is impaired.  The creditor will retain its lien and priority on the collateral and the proceeds of sale until the creditor is paid, including unpaid interest and attorney's fees as an oversecured creditor.  Upon the sale or refinance by the Trustee of the Residence, the Secured Claim of U.S. Bank Home Mortgage, a division of U.S. Bank National Association which is asserted as a secured claim in second position against the Residence, reflected by a second deed of trust in the amount of $493,443.09. as reflected on Proof of Claim 7, minus post-petition payments made, plus post-petition payments not made under a forbearance agreement and allowed under the U.S. Bank Private Select Home Equity Credit Line Agreement and Deed of Trust entered into between U.S. Bank National Association on the one hand and Barbara Linett and Dana Linett on the other (the "U.S. Bank Secured Claim - 2nd Position" and/or "Class 1B") shall be paid in full, with accrued and unpaid interest, after costs of sale are paid and after the Class 1A claim is paid in full.

**Class 1C - Beatrice L. Snider, APC**.  This class is impaired.  The creditor will retain its lien and priority on the collateral and the proceeds of sale until the creditor is paid.  Upon the sale or refinance by the Trustee of the Residence, the Secured Claim of Beatrice L. Snider, APC which is asserted as a secured claim in third position against the Residence, reflected by a FLARPL lien in the amount of $301,589.04, as provided in Proof of Claim No. 13, as between the Law Offices of Beatrice L. Snider, APC and Barbara Linett (the "Snider Secured Claim - 3rd Position" and/or "Class 1C") shall be paid in full, plus accrued and unpaid interest as an oversecured creditor at 5% interest per annum from the Petition Date to the time of payment, if funds suffice, after costs of sale are paid and after Class 1A and Class 1B Claims are paid in full.  Any payment on Claim 13 will be credited against the claim of Barbara Linett (Claim 11)

**Class 1D - Barbara Linett.**  This class is junior in priority to Class 1A, 1B and 1C claims and is impaired.  The creditor will retain her lien and priority on the collateral and the proceeds of sale until the creditor is paid.  Upon the sale or refinance by the Trustee of the Residence, the Secured Claim of Barbara Linett, reflected in part by a recorded Abstract of Judgment recorded on January 23, 2017, against the Residence in the amount of $884,054.79 as included as part of the Proof of Claim No. 11 in the sum of $3,034,967.71, minus the payment made to Beatrice L. Snider, APC provided for above (the "Barbara Linett Secured Claim - 4th Position" and/or "Class 1D") shall be paid in full, plus accrued and

1  unpaid interest as an oversecured creditor at 5% per annum from the Petition Date to the time of

2  payment, if funds suffice, after costs of sale are paid and after Class 1A, Class 1B, and Class 1C, Claims

3  are paid in full.   The payment of the Class 1D Claim to Barbara Linett will reduce any other claims of

4  Barbara Linett provided for herein.  In addition, any payment made to Barbara Linett on her other claims

5  provided for herein may reduce the payment due on the Class 1D Claim as set forth below.

6          Linett scheduled a homestead exemption claim of $175,000 against the Residence.   The

7  homestead exemption shall remain in that amount unless, prior to the date of sale or refinance of the

8  Residence, the state of California or a competent court of law establishes a different amount or finds that

9  the amount provided for under CCP Section 704.730 should be applied retroactively to a date that is on

10  or before the Petition Date.  The amount, priority and payment of the homestead exemption, including

11  any claims for surcharge or offset, if any, and any defenses to any such claims, shall be determined by

12  the Court prior to the confirmation of the Plan.  The Plan may then be amended to effectively treat

13  Linett's homestead exemption in accordance with the Court's determinations.

14          **Personal Property Secured Claims:** The following are the Debtor's personal real property

15  secured pre-petition claims and their treatment under this Plan:

16          **Class 1E  - US Bank, NA - Demand LOC**.  This class is impaired.  The creditor will retain its

17  lien and priority on the collateral and the proceeds of sale until the creditor is paid, including unpaid

18  interest and attorney's fees as an oversecured creditor.   The Secured Claim of U.S. Bank National

19  Association which is asserted as a secured claim in first position against the Estate's personal property,

20  including all business inventory, under that certain Demand Line of Credit Note, Demand Line of Credit

21  Agreement and Business Security Agreement as between U.S. Bank National Association and Linett (the

22  "U.S. Bank Secured Claim - Personal Property" and/or "Class 1E")   will be confirmed by separate

23  stipulation as between the Debtor, U.S. Bank, and Barbara Linett, as to the amount, priority and secured

24  status of the Class 1E Claim and said stipulation will be incorporated into the order confirming the Plan.

25          Notwithstanding anything to the contrary provided herein, the net proceeds, after costs of sale

26  and taxes, of any of the items in the Ford Collection may not be used to pay any operating expense of

27  the Trust, Trustee's Fees, or any other class of creditors of the Estate, unless and until the Secured Claim

28  of U.S. Bank (Class 1E) on the Ford Collection has been paid in full as provided herein above, including

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]

1    any accrued interest at the contractual rate after the Petition Date to the time of payment, plus any costs

2    and expenses allowed under the loan documents for the U.S. Bank Secured Claim – Personal Property.

3    In this regard, the Trustee shall use his reasonable discretion to sell enough of the Ford Collection to pay

4    the Class 1E Claim in full, including interest, attorneys' fees and costs as an oversecured creditor as

5    previously provided herein, during the initial thirty-six (36) months of the Plan.

6         The net proceeds, after costs of sale and taxes, of the sale of any other non-Ford Collection items

7    of personal property or proceeds received by the Trust as a settlement, or prosecution, of any claims of

8    the Estate may be used by the Trustee to pay any and all costs of administration of the Trust, which do

9    not include any pre-confirmation administrative expenses of the Estate.  If, after paying such

10   administrative expenses of the Trust, the Trustee determines to commence making any distribution to

11   any class of creditors of the Estate from the proceeds of the personal property, non-Ford Collection

12   items, then at the time of any such distribution, if the Class 1E Claim has not yet been paid in full, then

13   85% of any such distribution shall be paid towards the Class 1E Claim until it is paid in full and the

14   remainder may be used to pay claims in all other classes, including Barbara Linett's support payments,

15   except for General Unsecured Creditors (Class 2).  Once all of such other classes, including outstanding

16   support payments, Chapter 11 Administrative Claims and Priority Tax Claims, have been paid in full,

17   then 100% of the intended distribution shall be paid to the Class 1E Claim until it is paid in full.  Only

18   after the Class 1E claim has been paid in full (including interest, attorney's fees and costs as an

19   oversecured creditor), may the Trustee then commence distributions to Class 2 from the sale of non-Ford

20   Collection items.

21        **Class 1F- Barbara Linett**.  This class is junior in priority to US Bank's claim [Class 1E] and

22   is impaired.  The creditor will retain her lien and priority on the Ford Collection and the proceeds of sale

23   until the creditor is paid, including unpaid interest.  Upon the sale of personal property identified in the

24   Plan as the Ford Collection and after any payment of the Class 1E Claim from the sale of the Ford

25   Collection, as provided above, the Secured Claim of Barbara Linett which is asserted as a secured claim

26   in second position against the Ford Collection in the amount of $3,034,967.71 pursuant to Proof of

27   Claim No. 11 (the "Barbara Linett Secured Claim – Ford Collection" and/or "Class 1F"), minus

28   payments made to the Class 1D Claim, will receive payments up to the full amount of the Class 1F claim

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]                                                    14

1  minus the payments made to the Class 1D Claim plus accrued and unpaid interest at 5% per annum and

2  attorneys' fees and costs to the extent she is an oversecured creditor.

3  **Class 2.  Class of General Unsecured Claims**

4  General Unsecured Claims consist of any Claim that is not an Administrative Claim, a

5  Professional Fee Claim, a Priority Tax Claim or a Secured Claim.  General Unsecured Creditors are

6  made up of all other creditors holding Allowed Claims not previously mentioned that have either filed

7  claims or were included as undisputed creditors, with the exception of Squar Milner which voluntarily

8  waived its pre-petition claim in order to continue providing post-petition services to the Estate.  Any

9  amounts continuing to be owed to Barbara Linett on account of any deficiency in her secured claims will

10  be included in Class 2 General Unsecured Claims.  Holders of Claims in Class 2 are impaired.  Each

11  holder of General Unsecured Claim is not conclusively presumed to accept the Plan under section

12  1126(f) of the Bankruptcy Code and is therefore entitled to vote to accept or reject the Plan in its

13  capacity as a holder of such Claim.

14  General Unsecured Claims are to be paid after Fee Claims, Administrative Expense Claims and

15  Priority Claims are paid in full.  Payments to Class 2 General Unsecured Claims will continue on a pro

16  rata distribution basis until they are paid in full, without interest.

17  **Class 3.  Class of Interest Holders**

18  Interest holders are the parties who hold ownership interest (i.e., equity interest) in the Debtor.

19  If the Debtor is an individual, the Debtor is the interest holder.

20  The Class 3 interest holder, the Debtor, is impaired. The holder of Class 3 Interests will receive

21  no distribution from the Liquidating Trust, but may receive a reversionary interest after all other creditors

22  and claims are paid in full.  The holders of Class 3 Interests are deemed to reject the Plan and are not

23  entitled to vote to accept or reject the Plan.

24  Linett's Reversionary Interest:

25  (i)      To the extent that all costs of administration, taxes and the Allowed Claims of creditors

26  are paid in full, the residual of the Trust Assets thereafter, if any, shall revert to Linett free of the Trust.

27  ///

28  ///

1    (ii)    Linett shall be entitled to a reversionary interest in the following Trust Assets: (A) All

2    Trust Assets abandoned by the Trust; and (B) Any residual amounts or Trust Assets held by the Trust

3    after the payment in full of all Administrative Expense Claims, Priority Claims, Tax Claims, Secured

4    Claims against any personal property of Linett and General Unsecured Claims.

5                                   **IV.**

6                    **TREATMENT OF MISCELLANEOUS ITEMS**

7        **A.  Executory Contracts and Unexpired Leases**

8        According to Debtor's Schedule G filed in this case, the Debtor has no executory contracts or

9    unexpired leases to assume or reject.  Should that prove to be incomplete or inaccurate, the Plan rejects

10   any and all executory contracts or unexpired leases as of the Effective Date pursuant to Section 365 of

11   the Bankruptcy Code.  The Confirmation Order shall constitute an order of the Bankruptcy Court

12   approving such rejection as of the Effective Date.

13       Nothing in the Plan, any exhibit to the Plan, or any document executed or delivered in connection

14   with the Plan or any such exhibit creates any obligation or liability on the part of the Debtor, the

15   Liquidating Trust, or any other person that is not currently liable on such obligation, with respect to any

16   executory contract or unexpired lease.

17       **B.  Bar Date for Rejection Damages**

18       If the rejection of an executory contract or unexpired lease pursuant to the Plan and the

19   Confirmation Order gives rise to a Claim by the other party or parties to such contract or lease, such

20   Claim shall be forever barred and shall not be enforceable against the Debtor, the Estate, or the

21   Liquidating Trust unless a proof of claim is filed and served on the Debtor or the Liquidating Trust, as

22   the case may be, and its counsel within thirty (30) days after the entry of the Confirmation Order.  All

23   such Claims for which proofs of claim are required to be filed, if allowed, will be treated as, General

24   Unsecured Claims, subject to the provisions of the Plan.

25       As soon as practicable after the entry of the Confirmation Order, but no later than ten (10) days

26   thereafter, the Debtor or Debtor's counsel shall file and serve on each non-debtor counter-party to a

27   contract or lease the rejection of which is approved by the Confirmation Order a written notice of the

28   bar date for rejection of such claims.

1  **C.  Insurance Policies**

2       For the avoidance of doubt, the Debtor's rights with respect to all insurance policies under which

3  the Debtor may be a beneficiary (including all insurance policies that may have expired prior to the

4  Petition Date, all insurance policies in existence on the Petition Date, all insurance policies entered into

5  by the Debtor after the Petition Date, and all insurance policies under which the Debtor holds rights to

6  make, amend, prosecute and benefit from claims), are either retained by the Liquidating Trust or

7  cancelled, in the Liquidating Trustee's discretion, after the Effective Date until the Trust's dissolution.

8  Upon the Effective Date, any existing insurance policies that can be assigned and all proceeds of such

9  policies will be transferred or assigned by the Debtor to the Liquidating Trust pursuant to this Plan.

10  Notwithstanding any provision providing for the rejection of executory contracts, any insurance policy

11  that is deemed to be an executory contract shall neither be rejected nor assumed by operation of this Plan

12  and shall be the subject of a specific motion by the Liquidating Trust or the Liquidating Trustee, as the

13  case may be, who shall retain the right to assume or reject any such executory contracts pursuant to and

14  subject to the provisions of section 365 of the Bankruptcy Code following the Effective Date.

15  Notwithstanding the above, Debtor is required under the Trust Agreement to maintain insurance on the

16  Residence and his business operations.  Any such insurance policies will be held by both the Debtor and

17  the Trustee for their mutual benefit.

18                                    **V.**

19          **MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN**

20  **A.  Implementing Actions In General; Conditions to the Effective Date**

21       As a condition to effectiveness of the Plan, the following must occur:

22            (i)  the Confirmation Order shall have become a Final Order; provided, however, at the

23            option of the Plan Proponent, the Confirmation Order, if it is subject to a pending appeal

24            or certiorari proceeding, may be considered a Final Order provided no court of competent

25            jurisdiction has entered an order staying the effect of the Confirmation Order;

26            (ii)  the Liquidating Trust Agreement is final and approved and the Liquidating Trustee

27            has been selected;

28  ///

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]                                    17

1           (iii) all actions, documents and agreements necessary to implement the Plan will have

2           been effected or executed; and

3           (iv) the Debtor will have received all authorizations, consents, rulings, opinions or other

4           documents that are determined by the Proponent to be necessary to implement the Plan.

5        The Plan will not be consummated or become binding unless and until the Effective Date occurs,

6 which shall in all events occur prior to the date that is 90 days following entry of the Confirmation

7 Order, unless the Confirmation Order is stayed or an order of the Court extending the Effective Date for

8 good cause shown is entered pursuant to a motion seeking such extension that was filed prior to the

9 expiration of said 90-day period.

10        The Proponents may in their reasonable discretion waive any of the conditions to the Effective

11 Date without notice and a hearing.  Unless the condition is waived as set forth above, the failure to

12 satisfy any condition may be asserted by the Proponents as a basis to allege that the Effective Date has

13 not occurred regardless of the circumstances giving rise to the failure of such condition to be satisfied

14 (including, without limitation, any act, action, failure to act, or inaction by the Debtor).  If the Proponents

15 fail to assert the non-satisfaction of any such conditions, such failure will not be deemed a waiver of any

16 other rights hereunder.

17    **B. <u>Debtor's Authority</u>**

18        Upon the Effective Date all transactions and applicable matters provided for under the Plan will

19 be deemed to be authorized and approved by the Debtor without any requirement of further action by

20 the Court or the Debtor.  However, if deemed necessary and upon an ex parte application by any of the

21 Proponents, an elisor may be appointed by the Court, upon ex parte request without need of a hearing,

22 to execute the documents and instruments required to effectuate the Plan.

23        On the Effective Date, the employment, appointment and authority of all employees and

24 professionals of the Debtor shall be deemed to terminate.  No compensation will be paid to insiders after

25 the Effective Date unless, in the sole discretion of the Liquidating Trustee, the Liquidating Trust retains

26 an insider for assistance in the liquidation of the Liquidating Trust Assets or resolution of the claims

27 filed against the Debtor.  To the extent funds are available, the Liquidating Trustee shall continue paying

28 the Debtor's post-petition domestic support obligation to Barbara Linett until her Allowed Claim has

1   been satisfied, at which time the support obligation expires.

2       **C. Liquidating Trust**

3       **1. Effectiveness of the Liquidating Trust**

4       On the Effective Date the Liquidating Trust Agreement, **Exhibit A** hereto, will become effective.

5   The Liquidating Trust is organized and established as a trust for the benefit of the Beneficiaries and is

6   intended to qualify as a liquidating trust within the meaning of Treasury Regulation Section

7   301.7701-4(d). The Liquidating Trust shall not terminate until all Liquidating Trust Expenses of the

8   Liquidating Trust have been satisfied and all the remaining Liquidating Trust Assets have been disbursed

9   to Beneficiaries or all Beneficiaries have been paid in full. Thomas Hebrank, CPA, with E3 Advisors

10  has been selected by the Plan Proponent to serve as the Liquidating Trustee.

11      The Liquidation Trustee shall exercise the powers granted to him in the Liquidating Trust so as

12  to fully comply with the requirements of the Plan that are not otherwise provided for in the Trust

13  Agreement. In the event of any inconsistency between the Plan and the Liquidating Trust, the terms and

14  conditions of the Liquidating Trust shall prevail. If necessary, the Trustee may request the Bankruptcy

15  Court issue instructions with respect to any such inconsistencies. Any defined terms not defined in the

16  Liquidating Trust shall be interpreted in accordance with any definitions in this Plan.

17      **2. Beneficiaries**

18      In accordance with Treasury Regulation Section 301.7701-4(d), the Beneficiaries of the

19  Liquidating Trust [defined as "Creditors" in the Liquidating Trustee Agreement] will be the Holders of

20  all Allowed Claims against the Debtor whose Allowed Claims have not been previously satisfied in full.

21  As provided in the Liquidating Trust, Debtor is the Grantor under the Trust and retains a reversionary

22  interest in the Trust Assets.

23      **3. Implementation of the Liquidating Trust**

24      On the Effective Date, the Proponents shall take all such actions as are required to transfer those

25  of the Debtor's Assets that are to be transferred to the Liquidating Trust, it being understood the Debtor

26  will retain certain assets listed in Schedule C of the Liquidating Trust. From and after the Effective

27  Date, the Liquidating Trustee will be authorized to, and will take all such actions as required to

28  implement the Liquidating Trust and the provisions of the Plan as are contemplated to be implemented

by the Liquidating Trustee, including, without limitation, directing and causing Distributions to be made to holders of Allowed Claims pursuant to the terms of the Liquidating Trust and this Plan, objecting to Claims, and prosecuting, determining not to prosecute, or otherwise resolving any Causes of Action as provided in the Liquidating Trust.

**4. Transfer of Debtor's Assets**

On the Effective Date, the Debtor shall transfer, grant, assign, convey, set over, and deliver to the Liquidating Trust all of the Debtor's right, title and interest in and to the Debtor's Trust Assets, including, without limitation, all Cash, free and clear of all liens, claims, encumbrances or interests of any kind in such Debtor's Trust Assets provided in Schedule "B" of the Liquidating Trust, except as otherwise expressly provided in this Plan and/or the Liquidating Trust, including those assets deemed abandoned to Debtor under Schedule "C" of the Liquidating Trust. To the extent required to implement the transfer of the Debtor's Assets from the Debtor to the Liquidating Trust, all persons will cooperate to assist the Debtor to implement said transfers. As provided in the Liquidating Trust, Ms. Linett shall transfer any of her interests in the Residence to the Liquidating Trust.

**5. Vesting of Assets**

Unless otherwise expressly provided under this Plan, on the Effective Date, all of the Debtor's Trust Assets will vest in the Liquidating Trust free and clear of all claims, liens, encumbrances, charges and other interests, except as otherwise provided by the provisions of the Plan. On and after the Effective Date, the transfer of the Debtor's Trust Assets to the Liquidating Trust will be deemed final and irrevocable, subject to Debtor's Reversionary Interest, and Distributions will be made from the Liquidating Trust.

In connection with the foregoing:

(a)    On the Effective Date, the appointment of the Liquidating Trustee shall become effective and the Liquidating Trustee shall begin to administer the Liquidating Trust pursuant to the terms of the Liquidating Trust and the Plan and may use, acquire and dispose of the Liquidating Trust Assets free of any restrictions imposed under the Bankruptcy Code.

///

///

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]

1          (b)  The Confirmation Order will provide the Liquidating Trustee with express authority

2 to convey, transfer and assign any and all of the Liquidating Trust Assets in accordance with the

3 terms of this Plan and the Liquidating Trust and to take all actions necessary to effectuate same

4 and to prosecute or not prosecute, as the Liquidating Trustee deems appropriate, any and all

5 objections to Claims or Causes of Action.

6          (c)  As of the Effective Date, the Liquidating Trust Assets will be free and clear of all

7 liens, claims and interests of Holders of Claims, except as otherwise provided in the Plan.

8     **6. Funding of the Liquidating Trust**

9     The funding of the Liquidating Trust for the payments to be made to Holders of Allowed Claims

10 under the Plan shall be funded from the: (a) the Debtor's Cash on hand as of the Effective Date and

11 proceeds from the investment of such Cash, and (b) the proceeds of the liquidation by the Liquidating

12 Trustee of any other Trust Assets.

13     Upon confirmation of the Plan, and as a provision of the order confirming the Plan, the Debtor

14 will transfer the bankruptcy estate assets that are provided as the Trust Assets described in Schedule "B"

15 to the Liquidating Trust to the Liquidating Trust.  The Liquidating Trustee will appoint one or more

16 Liquidating Agent(s) who will catalog and marshal the Debtor's entire personal and business collections

17 of all coin, currency, and Americana that are part of the Trust Assets.  The Debtor shall cooperate with

18 Trustee in good faith to disclose and turn over all of the Trust Assets to the Liquidating Trustee as well

19 as complete copies of all accounting and inventory records of the EAHA and EAN business from the

20 Petition Date to the date of transfer.  The Debtor shall certify in a writing, filed with the Bankruptcy

21 Court, that he has disclosed all such assets to the Liquidating Trustee to the best of his actual knowledge.

22 The Liquidating Agent will proceed to sell those assets at his discretion, subject to the Liquidating

23 Trustee's approval, with the goal of selling these assets in order to generate a fair market return.

24     **7. No Liability of Liquidating Trustee or His Agents**

25     To the maximum extent permitted by law, the Liquidating Trustee and the Liquidating Trustee's

26 Agents will not have or incur liability to any person for an act taken or omission made in good faith in

27 connection with or related to the administration of the Liquidating Trust Assets, the implementation of

28 the Plan and the Distributions made thereunder; provided, however, that the foregoing limitation shall

1  not apply to any damages suffered or incurred by any holder of a Claim or Beneficiary that are found in

2  a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted

3  primarily and directly from the fraud, gross negligence, willful misconduct, or reckless indifference to

4  the interest of the Beneficiaries of the Liquidating Trustee or the Liquidating Trustee's Agents or for

5  profit derived from a breach of trust by the Liquidating Trustee or the Liquidating Trustee's Agents. The

6  Liquidating Trustee and the Liquidating Trustee's Agents will in all respects be entitled to reasonably

7  rely on the advice of counsel with respect to their duties and responsibilities under the Plan and the

8  Liquidating Trust.  Entry of the Confirmation Order constitutes a judicial determination that the

9  exculpation provision contained in Section VII.A. of the Plan is necessary, inter alia, to facilitate

10  Confirmation and feasibility of the Plan and to minimize potential claims arising after the Effective Date

11  for indemnity, reimbursement or contribution from  the Liquidating Trust or the Liquidating Trust

12  Assets.  The Confirmation Order's approval of the Plan also constitutes a res judicata determination of

13  the matters included in the exculpation provisions of the Plan.

14      Notwithstanding the foregoing, nothing herein or in Section VII.A. of the Plan will alter any

15  provision in the Liquidating Trust that provides for the potential liability of the Liquidating Trustee to

16  any person.

17      **8. Funding of the Liquidating Trust's Liquidating Trust Expenses**

18      All expenses related to implementation of the Plan incurred from and after the Effective Date

19  will be expenses of the Liquidating Trust, and the Liquidating Trustee will disburse funds from the

20  Liquidating Trust Assets, as appropriate, for purposes of paying the Liquidating Trust Expenses without

21  the need for any further Order of the Court.  The Liquidating Trust Expenses shall include, but are not

22  limited to (a) the fees and expenses of (i) the Liquidating Trustee and (ii) the attorneys and other

23  professionals retained by the Liquidating Trustee, and (b) other expenses of the Liquidating Trust, if any,

24  until the Liquidating Trust is dissolved.  The Liquidating Trustee's payment of these expenses is subject

25  to the requirements of the Liquidating Trust and this Plan with respect to the secured claims of U.S.

26  Bank and Barbara Linett as provided herein above.

27  ///

28  ///

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]                                      22

**D.  The Representative for the Estate**

The Liquidating Trustee from the Effective Date until the Liquidating Trust is terminated will be appointed as the representative of the Estate pursuant to sections 1123(a)(5), (a)(7) and (b)(3)(B) of the Bankruptcy Code and as such will be vested with the authority and power to *inter alia*: (i) object to Claims; (ii) administer, investigate, prosecute, and settle or abandon all Causes of Action; (iii) make distributions provided for in the Plan, including, but not limited to, on account of Allowed Claims; and (iv) take such action as required to administer, wind down, and close the case, subject to the Liquidating Trust.  As the representative of the Estate with respect to all Trust Assets transferred to the Liquidating Trust, and then the Liquidating Trustee, as of the Effective Date, will be substituted and will replace the Debtor and the Estate, as the party in interest in any litigation pending as of the Effective Date, excluding any litigation abandoned to the Debtor prior to, on or after the Effective Date.

**E.  Provisions Governing Distributions**

**1.  Disbursing Agent**

The Liquidating Trustee, after the Effective Date until the Liquidating Trust terminates, will serve as the Disbursing Agent under the Plan or may select another entity to serve as the Disbursing Agent.  Any entity other than the Liquidating Trustee that acts as a Disbursing Agent for the Liquidating Trust will be an agent of the Liquidating Trustee and not a separate taxable entity with respect to, for example, the assets held, income received or disbursements or Distributions made for the Liquidating Trustee.  The Liquidating Trustee will not be required to provide a bond in connection with the making of any distributions pursuant to the Plan.

The Disbursing Agent will make all Distributions required under this Plan.  The Disbursing Agent shall be authorized to implement such procedures as it deems necessary to make Distributions pursuant to this Plan so as to efficiently and economically assure prompt and accurate Distributions.

**2.  The Source of Distributions**

The sources of all Distributions and payments made by the Liquidating Trustee under the Plan will be Cash that vests in the Liquidating Trust as of the Effective Date and proceeds from the investment of Cash, the liquidation by the Liquidating Trust of any non-Cash Liquidating Trust Assets, and any proceeds from the investment of the Liquidating Trust Assets.  Prior to any Distribution to any

1  Holders of Allowed Claims under the Plan, the Liquidating Trustee shall establish and fund the
2  Liquidating Trust Expense Reserve and thereafter maintain sufficient funds therein to satisfy the
3  anticipated ongoing Liquidating Trust Expenses of the Liquidating Trust.

4          The sources of all Distributions and payments made by the Liquidating Trustee under the Plan
5  and the Liquidating Trust will be the Liquidating Trust Assets.

6          **3.  Distribution Dates**

7          The date of the initial Distribution by the Liquidating Trust shall be on the Effective Date or as
8  soon thereafter as is practicable.  Each subsequent Distribution shall be pursuant to the provisions set
9  forth in the Liquidating Trust.

10          **4. Manner of Cash Payments**

11          Distributions made pursuant to the Plan will be in United States funds, by check drawn on a
12  domestic bank, or, if the Liquidating Trustee so elects in its discretion for Distributions to certain large
13  Creditors, by wire transfer from a domestic bank.

14          **5.  Setoff and Recoupment**

15          Notwithstanding anything to the contrary in the Plan, the Liquidating Trustee may set off, recoup,
16  or withhold against the Distributions to be made on account of any Allowed Claim any Claims or Causes
17  of Action that the Debtor or the Estate held against the entity holding the Allowed Claim.

18          **6.  No *De Minimis* Distributions**

19          Notwithstanding anything to the contrary in this Plan, no Distribution of less than $20.00 will
20  be made to any Holder of an Allowed Claim on account thereof.  No consideration will be provided in
21  lieu of the de minimis Distributions that are not made under this Section.

22          **7.  Fractional Cents**

23          When any payment of a fraction of a cent would otherwise be called for, the actual payment will
24  reflect a rounding of such fraction to the nearest whole cent (rounding down in the case of less than
25  $0.005 and rounding up in the case of $0.005 or more); provided, however, that, in no event, will a
26  Distribution of less than $20.00 be made to any Holder of an Allowed Claim on account thereof as set
27  forth above.

28  ///

**8. No Distributions with Respect to Disputed Claims**

Notwithstanding any other Plan provision, no Distributions will be made on account of a Disputed Claim.  Distribution on a Disputed Claim will be made when the Disputed Claim becomes or is deemed to be an Allowed Claim for purposes of Distributions.  The Liquidating Trustee may request that the Bankruptcy Court estimate any claim not expressly allowed by the terms of the Plan and otherwise subject to estimation under Section 502© of the Bankruptcy Code.  If the Court estimates any contingent or unliquidated Claim, the estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim as determined by the Court.

**9. Undeliverable or Unclaimed Distributions**

Distributions to entities holding Allowed Claims will initially be made by mail as follows:

(a)  Distributions will be sent to the address, if any, set forth on a filed proof of claim as amended by any written notice of address change received by the Debtor prior to the Effective Date or Liquidating Trustee no later than ten (10) Business Days prior to the date of any Distribution; or

(b)  Distributions will be sent to the address listed on the Debtor's Schedules or the address provided by the Debtor in Schedule A to the Liquidating Trust.

In the event any check representing a distribution under the terms of this Trust agreement to a creditor of the Trustor is returned to the Trustee as undeliverable, or remains uncashed by the creditor for a period of 90 days after being mailed to such creditor at the creditor's last known address, and the Trustee, after reasonable efforts to locate the creditor, is unable to locate the creditor, the Trustee may cancel the check representing such distribution and distribute such funds to the remaining creditors of the Trust, and make no further distributions to the omitted creditor unless such creditor obtains an order of the Bankruptcy Court to be reinstated as a creditor beneficiary.

**10. Record Date**

The record date for purposes of Distributions under this Plan shall be the Confirmation Date.  To determine the names of the Holders of Claims as of the Record Date, the Liquidating Trustee will rely on the proofs of Claim and transfers of such proofs of Claim filed in the Case.

///

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]                                                                    25

**F.  Disbursement of Remaining Liquidating Trust Assets**

After all the Allowed Claims have been fully satisfied as provided in this Plan, and all Liquidating Trust Expenses have been paid, all remaining Cash and any unliquidated assets held by the Liquidating Trust shall be tendered to the Debtor. The Trust shall terminate following the distribution of all Trust Assets to creditors and/or by reversion of any remaining Trust Assets to the Debtor, the winding up of the Trust's affairs and the discharge of the Trustee by order of the Bankruptcy Court.

**VI.**

**LITIGATION AND CLAIMS OBJECTIONS**

**A.  Preservation of Rights of Action and Defenses**

The Liquidating Trust shall retain all rights of the Debtor to commence and pursue, as appropriate, in any court or other tribunal including, without limitation, in an adversary proceeding filed in the Case, any and all Causes of Action, whether such Causes of Action accrued before or after the Petition Date, including, but not limited to, the actions specified herein.

Except as otherwise provided in the Plan, in accordance with section 1123(b)(3) of the Bankruptcy Code, any Claims, rights, and Causes of Action that the Debtor may hold against any person shall, on the Effective Date, vest in the Liquidating Trust. The Liquidating Trust shall retain and may exclusively enforce any and all such Claims, rights or Causes of Action, and commence, pursue and settle the Causes of Action in accordance with the Plan and the Liquidating Trust. The Liquidating Trust shall have the exclusive right, authority, and discretion to institute, prosecute, abandon, settle, or compromise any and all such claims, rights, and Causes of Action subject to the requirements of the Liquidation Trust regarding notice and Bankruptcy Court approval of certain actions including but not limited to proposed settlements. Under the Plan, the Liquidating Trust retains the right on behalf of the Debtor to commence and pursue any and all Causes of Action without the consent or approval of any third party and without any further order of court. As provided in the Liquidating Trust, if the Liquidating Trustee abandons any Causes of Action or Claims, the Debtor may then pursue such actions at his own expense. If the Trustee abandons any such Causes of Action or Claims, he must notify the Plan Proponents as provided for in the Trust and may then obtain an order from the Bankruptcy Court approving such abandonment.

The Plan Proponents are currently investigating whether to pursue potential Causes of Action against Creditors or other Persons. The investigation has not been completed to date, and under the Plan, the Liquidating Trust shall retain the right on behalf of the Debtor to commence and pursue any and all Causes of Action. Potential Causes of Action currently being investigated, which may, but need not, be pursued by the by the Liquidating Trust after the Effective Date include, without limitation, the following Causes of Action:

- All actual or potential avoidance actions pursuant to any applicable section of the Bankruptcy Code including, without limitation, sections 544, 545, 547, 548, 549, 550, 551, 553(b) and/or 724(a) of the Bankruptcy Code, arising from any transaction involving or concerning the Debtor, and among others, without limitation all actual or potential avoidance claims for preferential transfers by the Debtor;

- All actual or potential actions, whether legal, equitable or statutory in nature, for, or in any way involving, the collection of accounts receivable or general ledger items that are due and owing to the Debtor by any Person(collectively, the "Accounts Receivable");

- All actual actions or potential actions, whether legal, equitable or statutory in nature, against vendors for overpayment, improper setoff, warranty, indemnity, retention of double payments, retention of mis-directed wires, deductions owing or improper deductions taken, claims for damages arising out of goods sold to the Debtor, or any other claim arising out of the vendor relationship;

- Any litigation or lawsuit initiated by the Debtor that is currently pending, whether in the Bankruptcy Court, or any other court or tribunal, including the legal malpractice claim scheduled by the Debtor that is pending in state court and potential claims against Debtor's former attorneys that have only been recently discovered and which may be brought against other former attorneys of the Debtor; and

- All actual or potential actions, whether legal, equitable or statutory in nature, arising out of, or in connection with, any of the Debtor's prepetition and/or postpetition management, operation and/or reporting of financial or other information, of the Debtor's business.

///

1        This statement is not intended to and in no way limits the preservation of any Causes of Actions

2    against any other parties as set forth in this section.  There may be other Causes of Action which

3    currently exist or may subsequently arise that are not set forth herein, because the facts upon which such

4    Causes of Action are based are not fully or currently known at this time by the Plan Proponents and, as

5    a result, cannot be specifically referred to herein (collectively, the "Unknown Causes of Action").  The

6    failure to list any such Unknown Causes of Action herein is not intended to limit the rights of the

7    Liquidating Trust to pursue any Unknown Cause of Action.

8        Unless a Claim or Cause of Action against a Creditor or other person is expressly waived,

9    relinquished, released, compromised or settled in the Plan or any Final Order, all such Claims or Cause

10    of Action are reserved to the Liquidating Trust for subsequent action (including, without limitation,

11    Unknown Causes of Action), and, therefore, no preclusion doctrine, including, without limitation, the

12    doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel

13    (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after

14    the Confirmation or Effective Date of the Plan based on the Disclosure Statement, the Plan or the

15    Confirmation Order, except where such Claims or Causes of Action have been released in the Plan or

16    other Final Order.

17        Any person to whom the Debtor has incurred an obligation (whether on account of services,

18    purchase or sale of goods or otherwise), or who has received services from the Debtor or a transfer of

19    money or property of the Debtor, or who has transacted business with the Debtor should assume that

20    such obligation, transfer, or transaction may be reviewed by the Liquidating Trust subsequent to the

21    Effective Date and may, if appropriate, be the subject of an action after the Effective Date, whether or

22    not (i) such person has filed a proof of Claim against the Debtor in this Case; (ii) such Creditor's proof

23    of Claim has been objected to; (iii) such Creditor's Claim was included in the Debtor's Schedules; or

24    (iv) such Creditor's scheduled Claim has been objected to by the Debtor or has been identified by the

25    Debtor as disputed, contingent, or unliquidated.

26        As of the Effective Date, subject to the Liquidating Trust, the Liquidating Trustee, on behalf of

27    the Liquidating Trust, will be authorized to exercise and perform the rights, powers and duties held by

28    the Debtor's Estate with respect to the rights, claims, causes of action, defenses, and counterclaims,

1  including, without limitation, the authority under section 1123(b)(3) of the Bankruptcy Code to provide

2  for the settlement, adjustment, retention and enforcement of claims and interests of the Estate subject

3  to any notice and/or bankruptcy court approval requirements set forth in the Liquidating Trust.

4        The Liquidating Trustee, subject to the Liquidating Trust, from and after the Effective Date will

5  make the decision of whether or not to pursue any Cause of Action.  The decision to abandon any Cause

6  of Action or Claim must be made by the Liquidating Trustee within 180 days of the Effective Date as

7  provided in Section 4.1.1. of the Liquidating Trust.

8       **B.  Disputed Claims**

9        On the Effective Date the Liquidating Trust will assume control of all pending claims objections,

10  civil lawsuits, or adversary proceedings the Debtor had already commenced.  On and after the Effective

11  Date, the Liquidating Trust will have the right to make and file objections to any Claim of any nature

12  and to prosecute, settle and/or withdraw such objections. The Liquidating Trustee will have the authority

13  to compromise, settle, withdraw or otherwise resolve any objections to a Claim subject to approval of

14  the Bankruptcy Court; provided, however, that the Liquidating Trustee may in its discretion seek relief

15  before the Bankruptcy Court with respect to any Disputed Claim.  The Liquidating Trust will file and

16  serve all objections to Priority Claims, Secured Claims, and General Unsecured Claims upon the Holder

17  of the Claim as to which the objection is made no later than 90 days after the Effective Date, provided,

18  however, that nothing herein will reduce the time permitted under applicable statutes of limitation for

19  bringing any affirmative Causes of Action that the Liquidating Trust may assert against any third party.

20  The Claim Objection Deadline may be extended only by an order of the Bankruptcy Court.

21

22                 **VII.**

23      **EFFECT OF CONFIRMATION OF PLAN / OTHER PLAN PROVISIONS**

24      **A.  Exculpation and Release of Plan Proponents and Their Professionals**

25        To the extent permitted by the Bankruptcy Code and except to the extent arising from willful

26  misconduct or gross negligence, any and all Claims, liabilities, causes of action, rights, damages, costs

27  and obligations held by any party against the Plan Proponents and their Professionals in any manner

28  related to the postpetition administration of the Case, any postpetition act or omission in connection

with, arising out of, or related to the Case, or the formulation, negotiation, prosecution or implementation of the Plan, will be deemed fully waived, barred, released and discharged in all respects, except as to rights, obligations, duties, claims and responsibilities preserved, created or established by terms of this Plan. Pursuant to section 1125(e) of the Bankruptcy Code, the Proponents and their Professionals will neither have nor incur any liability to any person for their role in soliciting acceptances of this Plan.

**B. Injunction**

The Plan is the sole means for resolving, paying or otherwise dealing with Claims. To that end, except as expressly provided in the Plan and/or the Liquidating Trust, at all times on and after the Effective Date, all Persons who have been, are, or may be Holders of Claims against the Debtor, arising prior to the Effective Date, will be enjoined during the life of the Plan from taking any of the following actions, on account of any such Claim, against the Debtor, the Estate, the Liquidating Trust or their respective property (other than actions brought to enforce any rights or obligations under the Plan):

(i) commencing, conducting or continuing in any manner, directly or indirectly any suit, action, or other proceeding of any kind against the Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets (including, without limitation, all suits, actions, and proceedings that are pending as of the Effective Date which will be deemed to be withdrawn or dismissed with prejudice);

(ii) Enforcing, levying, attaching, executing, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or order against the Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets;

(iii) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any lien, security interest or encumbrance against the Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets; and

(iv) proceeding in any manner in any place whatsoever against the Debtor, the Estate, the Liquidating Trust, or the Liquidating Trustee, their successors, or their respective property or assets, that does not conform to or comply with the provisions of the Plan.

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]

1    Nothing in this Section VII. B. or the Confirmation Order shall enjoin or act to enjoin (a) the

2    Liquidating Trustee from pursuing any claim, right or Cause of Action preserved under the terms of this

3    Plan as set forth above in Section VI. B.  Discharged claims, as provided herein below, will be

4    permanently enjoined from taking any of the above actions.

5    **C.    Discharge**

6    This Plan provides that upon the Effective Date, Debtor shall be discharged of liability for

7    payment of dischargeable debts incurred before the Petition Date, to the extent specified in 11

8    U.S.C.§1141.  However, Debtor's duties that require performance by the Debtor as  imposed by the

9    Liquidating Trust will <u>not</u> be discharged.  The Liquidating Trust controls as to the ability of creditors

10    to proceed, in any way, as against the Debtor after the Effective Date of the Plan.

11    **D.    Reversion of Property to the Debtor**

12    Trust Assets of the estate will not revest in the Debtor until the Plan has been consummated and

13    all Allowed claims paid in full or upon dismissal of the case.  Revesting of any assets from the

14    Liquidating Trust to the Debtor will be subject to all liens and encumbrances in existence when the case

15    was filed, except those liens avoided by court order or extinguished by operation of law.  In the event

16    the case is converted to a case under Chapter 7 after the Effective Date, the Liquidating Trust shall

17    remain in full force and effect, and remaining Trust Assets may revert to the Debtor.

18    **E.    Remedy in Event of Default Under the Plan**

19    If there is a material default at any time during the term of this Plan by the Liquidating Trustee

20    in the performance of any of the duties or obligations of the Liquidating Trust under the Plan, any

21    Creditor that is damaged by such failure may pursue its remedies in any court of competent jurisdiction

22    against the Liquidating Trustee.

23    **F.    Modification of Plan**

24    The Proponent of the Plan may modify the Plan at any time before confirmation.  However, the

25    Court may require a new disclosure statement and/or revoting on the Plan if proponent modifies the plan

26    before confirmation.  The Proponent of the Plan may also seek to modify the Plan at any time after

27    confirmation so long as (1) the Plan has not been substantially consummated <u>and</u> (2) if the Court

28    authorizes the proposed modifications after notice and a hearing.

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]

31

**G.     Quarterly Fees**

Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) to date of confirmation shall be paid to the United States Trustee on or before the effective date of the plan.  Quarterly fees accruing under 28 U.S.C. § 1930(a)(6) after confirmation shall be paid to the United States Trustee by the Liquidating Trustee in accordance with 28 U.S.C. § 1930(a)(6) until entry of a final decree, or entry of an order of dismissal or conversion to Chapter 7.

**H.     Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under §1112(b), after the Plan is confirmed, if there is a material default in performing the Plan.  If the Court orders the case converted to Chapter 7 after the Plan is confirmed but before the Effective Date, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from stay was not previously granted by the Court during this case.  If converted after the Effective Date, the Liquidating Trust shall remain in full force and effect, and the Trust Assets will remain in the Liquidating Trust.

**I.     Retention of Jurisdiction**

After Confirmation of the Plan and occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction as is legally permissible, including for the following purposes:

1.     To resolve any and all disputes regarding the operation and interpretation of the Plan, the Confirmation Order, or the Liquidating Trust;

2.     To determine the allowability, classification, or priority of any Claim or interest, based on any objection by the Debtor, the Liquidating Trust, or by other parties in interest with standing to bring such objection or proceeding;

3.     To determine the extent, validity, and priority of any lien asserted against property of the Debtor, property of the Estate, or the Liquidating Trust Assets;

4.     To construe and to take any action to (a) enforce and execute the Plan, the Confirmation Order, the Liquidating Trust, and any other order of the Bankruptcy Court; (b) issue such orders as may be necessary for the implementation, execution, performance, and

consummation of the Plan, the Confirmation Order, or the Liquidating Trust and all matters referred to in the Plan, the Confirmation Order, and the Liquidating Trust; and (c) determine all matters that may be pending before the Bankruptcy Court in this Case on or before the Effective Date with respect to any Person;

5.    To determine any and all applications to allow compensation and reimburse expenses of Professionals for periods on or before the Effective Date;

6.    To determine any other request for payment of administrative expenses;

7.    To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of the Plan, the Confirmation Order, or the Liquidating Trust;

8.    To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claims resulting therefrom;

9.    To adjudicate all adversary proceedings and contested matters, if any, initiated by the Liquidating Trust to pursue retained causes of action;

10.    To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters commenced during the Case whether before, on, or after the Effective Date;

11.    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

12.    To modify the Plan under section 1127 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intents and purposes;

13.    To issue injunctions or take such other actions or issue such other orders as may be necessary or appropriate to restrain interference with the Plan, the Confirmation Order, the Liquidating Trust or their implementation by any person or entity;

14,    To issue such orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, revoked, modified, reversed or vacated; and

///

15.     To issue such orders in aid of consummation of the Plan, the Confirmation Order, or the Liquidating Trust, notwithstanding any otherwise applicable nonbankruptcy law, with respect to any person or entity, to the full extent authorized by the Bankruptcy Code or Bankruptcy Rules.

**J.    Severability of Plan Provisions**

If, before Confirmation, the Bankruptcy Court holds that any Plan term or provision is invalid, void, or unenforceable, the Bankruptcy Court may alter or interpret that term or provision so that it is valid and enforceable to the maximum extent possible consistent with the original purpose of that term or provision, so long as such alternative interpretation does not materially alter the rights, remedies and distributions under the Plan of parties in interest in this Case. That term or provision will then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the Plan's remaining terms and provisions will remain in full force and effect and will in no way be affected, impaired, or invalidated. The Confirmation Order will constitute a judicial determination providing that each Plan term and provision, as it may have been altered or interpreted in accordance with this Section, is valid and enforceable under its terms.

**K.    Entry of Final Decree**

Promptly following the liquidation of all of the non-cash Liquidating Trust Assets and the completion of all Distributions to the Holders of the Allowed Claims, the Liquidating Trust may file a motion with the Bankruptcy Court to obtain entry of a final decree closing the Debtor's Case and discharging the Liquidating Trustee. After entry of the final decree, the Liquidating Trustee, on behalf of the Liquidating Trust, will be authorized in his sole and absolute discretion to discard or destroy any and all pre-Effective Date books and records of the Debtor in the Liquidating Trust's custody or control. The Liquidating Trustee will continue to preserve the post-Effective Date books and records subject to further Bankruptcy Court order.

Dated: August ___, 2021

_____
BARBARA LINETT
Plan Proponent

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]

1    Dated: August ___, 2021

2                                                    _____
                                                     DANA AARON LINETT
                                                     Plan Proponent

3

4

5

6

7

8    Dated: August 20, 2021                          _____/s/ Thomas B. Gorrill_____
                                                     THOMAS B. GORRILL, ESQ.
9                                                    Counsel for Barbara Linett

10

11   Dated: August 20, 2021                          _____/s/ John L. Smaha_____
                                                     JOHN L. SMAHA, ESQ.
12                                                   SMAHA LAW GROUP, APC
                                                     Counsel for Debtor, Dana Aaron Linett

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[Joint Ch 11 Liquidating Plan w-TOC (Final).wpd]

# EXHIBIT A

## IRREVOCABLE LINETT POOL TRUST AGREEMENT

Dana Linett ("Linett") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") on September 30, 2019 (the "Petition Date") in the United States Bankruptcy Court for the Southern District of California (the "Bankruptcy Court"). The chapter 11 case for Linett is identified with case number 19-05831-LA11 (the "Bankruptcy"). The filing of the Bankruptcy created a bankruptcy estate (the "Estate") with Linett acting as the Debtor-In-Possession under the Bankruptcy Code.

On _____, 2021 the Bankruptcy Court approved a plan of reorganization for the Estate (the "Plan"). This Irrevocable Linett Pool Trust Agreement (the "Trust") is entered into to implement the Plan as of the Effective Date of the Plan. The Trust will become effective as of the Effective Date, which is defined in the Plan. In furtherance thereof, Linett, as the Debtor-In-Possession for the Estate and on his own behalf, his employees, agents and associates, if any, as Trustor (hereinafter collectively, the "Trustor") and Thomas Hebrank, as Trustee hereunder (the "Trustee") enter into this Trust Agreement (the "Agreement" and/or the "Trust") for the benefit of the secured and unsecured creditors of the Linett Estate as set forth on the List of Creditors attached hereto as Schedule "A" as the same may be amended hereafter by the Trustee or the Bankruptcy Court to add additional names thereto or to amend amounts due as a result of the verification of claims process provided for herein below. Barbara Linett is a party to this Trust to the extent necessary to handle the transfer of the Residence as provided herein. In addition to any other obligations created herein, the Trustee shall exercise the powers granted to the Trustee herein to fully comply with any further requirements of the Plan that are not otherwise provided for herein. In the event of any inconsistency between the Plan and the Trust the terms and conditions of the Trust shall prevail. If necessary, the Trustee may at any time request that the Bankruptcy Court issue instructions with respect to any such inconsistencies. Any defined terms not defined herein shall be interpreted in accordance with any definitions of the same in the Plan.

Changes to the List of Creditors are subject to Bankruptcy Court approval. Such action may be done through the finalization of objections to claims in the Bankruptcy Court, creditor amendments as permitted by the Bankruptcy Code or notices of intended action. All references to the "creditors" or a "creditor" of Linett shall mean and refer to those creditors or claimants holding Allowed Claims listed on Schedule "A" hereto and to no other entity or individual to whom Linett may otherwise have owed a legally enforceable claim obligation on the Petition Date.

1

The Trustor hereby irrevocably transfers, assigns and delivers to the Trustee, in trust, the property described in Schedule "B" attached hereto, which property, together with any other property added thereto, shall constitute the trust assets and shall be held, administered and distributed as hereinafter provided (the "Trust Assets"). Such Trust Assets constitute the entirety of the Assets of the Estate provided, however, Linett has withheld or reserved from the same those certain assets which are either exempt from execution under applicable state or bankruptcy law or are excluded by designation on Schedule "C". On the Effective Date, those items listed in Schedule "C" shall be deemed abandoned to Linett from the Bankruptcy Estate and shall not be part of the Trust Assets. As a result of Linett assigning all of the non-exempt or non-excluded Estate Assets to the Trust, creditors with dischargeable claims will have no further rights as against Linett or any of the exempt or excluded assets and creditors shall only look to the Trust Assets for payment of their claims. In terms of consummation of the Plan, the Plan shall be deemed fully consummated upon the mutual execution hereof and the happening of the Effective Date as defined in the Plan.

In furtherance hereof and in accordance with applicable Bankruptcy Law, the Creditors of the Estate shall be permanently enjoined pursuant to the Plan and 11 USC § 1141 from pursuing any of their individual claims against Linett hereafter (the "Injunction"). Payment of Barbara Linett's claim to continuing support payments until her equalization claims are paid, shall be due and owing but left to the discretion of the Trustee as to when to pay that support from the Trust. Until the Trust has been terminated or all of the Trust Assets have been liquidated, Barbara Linett shall look solely to the Trust for payment of her claims, including but not limited to her spousal support claim.

To the best of his knowledge and belief Linett represents that such Trust Assets represent all of the non-exempt, non-excluded assets of the Estate owned directly or indirectly. Trustor agrees to cooperate with Trustee in good faith to turnover and deliver all such Trust Assets to the Trustee as well as complete copies of all accounting and inventory records of the EAHA and EAN businesses from the date of the petition to the date of transfer.

The Trust Assets include that certain property known as the residence/office located in Rancho Santa Fe, the address of which has been withheld due to security concerns (the "Residence"). Both Linett and Barbara Linett shall issue a deed of the Residence to the Trustee by and through the Plan on the Effective Date or as soon thereafter as may be completed. The transfer of the Residence to the Trust shall be exempt from reassessment as the Trust is for the benefit of both Linett and Barbara Linett. Linett currently resides in such property. While residing at the Residence, Linett will be responsible for ensuring that the Residence does not suffer any damage beyond ordinary wear and tear. So long as Linett

2

resides in the Residence, Linett shall be responsible for any damage to the Residence unless any damage to the same could not have reasonably been prevented by Linett. Linett will maintain all other furniture, fixtures and exempt property at the Residence unless Trustee authorizes and/or directs Linett to move Schedule C Assets offsite to another location. So long as he resides at the Residence, Linett shall be responsible for any utilities (water, trash, electricity and gas) and insurance on the residence during such residency. So long as he resides at the Residence, Linett shall be allowed to operate his businesses at his expense, including EAHA, and will be responsible for the direction of the same. As provided herein, income generated by Linett's businesses or EAHA after implementation of the Trust shall not be a part of the Trust with the exception of proceeds from the sale of any item which came from Linett's personal collections or inventory from Early American Numismatics. With respect to the sale of any such items after the Effective Date of the Trust, proceeds of those sales shall be turned over to the Trustee unless a superseding agreement regarding commissions and sales costs is made between Linett and the Trustee.

SECTION 1:  IRREVOCABILITY.

This agreement is irrevocable and may not be altered or amended in any respect except as may be approved or directed by the Bankruptcy Court. This Trust may not be terminated except pursuant to a power expressly granted by this instrument or following all distributions required or permitted by this Trust or by the Bankruptcy Court. This Trust shall remain in place and in full force and effect notwithstanding any conversion of the bankruptcy proceeding to a chapter 7 after the Trust is implemented.

SECTION 2:  RESTRICTIONS RELATING TO TRUSTOR.

Notwithstanding any other provision of this instrument, no powers enumerated herein or accorded to the Trustee pursuant to law shall be construed:

2.1    To enable the Trustor, or any officer or director of the Trustor, (i) to become a Trustee hereunder, (ii) to vote any stock which may at any time be directly or indirectly given to any trust hereunder, or (iii) to exercise any power of appointment with respect to any Assets of the Trust except for any of the Trust Assets which may revert to Linett personally as provided herein below (the "Reversionary Assets");

2.2    To enable the Trustor, or any officer or director of the Trustor, to borrow any part of the Trust Assets, directly or indirectly;

3

2.3     To permit any Trust distribution which would have the effect of discharging any legal obligation of Linett individually incurred after the date hereof, other than, Administrative Claims, legal obligations of the Estate to any Creditor as set forth on Schedule "A" or any other secured or unsecured creditor having an Allowed Claim against any of the Trust Assets.

2.4     To enable the Trustor to reacquire any Trust property by substituting other property of equal value. Notwithstanding the previous indication, Trustor may purchase Trust Assets as the highest bidder at auction or other comparable sales procedure used by the Trustee or his Liquidating Agents. The Trustor may not bid on items where the Trustor is appointed as the Liquidating Agent by the Trustee.

SECTION 3:  RESERVED CLAIMS.

3.1     Trustor's Claims.  The Estate is the owner of certain claims against various entities and individuals arising out of Linett's business operations and/or his divorce proceedings with Barbara Linett. Some of such claims may be claims for negligence and/or malpractice of professionals. To the extent such claims are not assignable under applicable law, Trustor, authorizes the Trustee to prosecute such actions in the name of Trustor with the proceeds of any such claims assigned to this Trust. Additionally, Trustor has additional accounts receivable and/or promissory notes which he shall transfer to the Trust. These claims are listed on Schedule "D."

3.2     Linett Appeal: The Trustor's claims also include an appeal. His appeal before the California Court of Appeals in the Linett v. Linett divorce identified as Case Number D075178 (the "Linett Appeal") (Collectively with the claims provided in Section 3.1, the "Trustor's Claims") was denied. As of August 11, 2021, the California Supreme Court has denied a petition for review of the Linett Appeal. The Trust shall henceforth control any remaining appellate rights as part of the Trust Assets, including the power to settle any remaining appellate claims, subject to Bankruptcy Court approval.

SECTION 4:  COLLECTION OF PRINCIPAL AND INCOME AND DUTIES OF TRUSTEE.

4.1     Claims of Trustor.

4.1.1   The Trustee shall prosecute all of the Trustor's Claims to the extent that the Trustee has determined that there is a substantial likelihood that net Assets will be made available as a result thereof. A decision to abandon or settle any of Trustor's Claims will require Bankruptcy Court approval as provided herein below. If abandoned, Trustor

4

may then prosecute such claims at his sole cost and expense free of the Trust. The decision whether to prosecute or abandon any such Claims shall be made within 180 days of the Effective Date. On or before such date the Trustee shall notify Linett and Barbara Linett in writing of the Trustee's decision. If the decision is to abandon any Claim, then such abandonment shall become effective upon the Trustee's submission of a declaration to the Bankruptcy Court confirming the notification to Linett and Barbara Linett along with an order approving the abandonment. The Bankruptcy Court may then sign the order with no further notice or opportunity for hearing.

4.1.2 The Trust shall indemnify and defend Trustee against any claim arising out of the prosecution of the Trustor's claims or the administration of this Trust, provided however the Trustee shall not be indemnified for claims arising out of the Trustee's breach of fiduciary duty, fraud or willful misconduct.

4.1.3 Trustee is authorized to utilize any law firm of Trustee's choosing in prosecuting or defending any of the Trustor's Claims or to otherwise administer the Trust. Any legal fees incurred as a result thereof shall be an obligation of the Trust and furthermore shall be subject to normal fee application procedures and approval by the Bankruptcy Court.

4.2 Liquidation. The Trustee shall liquidate the Trust Assets, whether by collection in the normal course, auction sale or otherwise in the sole reasonable business discretion of Trustee and distribute the net proceeds thereof in accordance with Section Five hereof. The Trustee shall cause the Assets to be liquidated and distributed within sixty (60) months of the date hereof.

4.2.1 Liquidating Agent: The Trustee may employ one or more liquidating agent(s) ("Liquidating Agent"). Any such Liquidating Agent shall be qualified and must have any and all licenses required to complete any sale of Trust Assets. The Trustee shall furthermore determine the appropriate compensation to be paid to any Liquidating Agent. Any such employment may be subject to Bankruptcy Court Approval for employment and compensation if the Liquidating Agent would be considered a Professional as defined in the Bankruptcy Code.

4.2.2 Notwithstanding the powers reserved to the Trustee provided herein, the Trustee may not sell any Asset listed on Schedule "E" hereof or settle any of the Trustor's claims without first obtaining approval of the Bankruptcy Court. Approval must be sought by motion or notice of intended action procedures.

5

SECTION 5:  DISTRIBUTION OF PRINCIPAL AND INCOME.

    5.1    Distribution of Proceeds and Taxes.

        5.1.1  The Trustee shall distribute income and principal of the Trust as it becomes available to the Trustee for distribution, provided, however, the Trustee shall, at all times during the administration of the Trust, retain funds sufficient, in the discretion of the Trustee, as a reserve for the proper management and administration of the Trust.  It is the intent of the Trust that any and all taxable income generated by the Trust shall be taxable solely to the Estate and not Linett personally.  Likewise, Linett shall be personally responsible for any income taxes resulting from his social security, W-2 income, his operation of a business or otherwise.

        5.1.2  Distributions of net distributable assets to general unsecured creditors shall be at least quarterly with payments due on or before April 1, July 1, October 1 and January 1 , or as soon thereafter as the Trustee may make such distributions, of each year, of the Trust commencing _____ 1, 2021 if applicable.  Trustee shall pay all costs of administration of the Trust first, including taxes owed on the petition date and taxes incurred from the sale of any assets, payment to secured creditors as provided herein below and any costs related to the sale of Assets, resulting in the "Net Distributable Assets".

    **5.2**    **UNCLASSIFIED CLAIMS**
        **5.2.1**  **Administrative Claims and Fee Claims:**

        (a) Administrative Expense Claims shall mean any right to payment constituting a cost or expense of administration of the Bankruptcy (other than a Fee Claim) allowed under sections 503(b) and 507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Estate. Administrative Expense claims may include the following: (a) expenses or liabilities incurred by the Trust in maintaining, operating or liquidating Linett's Trust Assets and/or business operations after the Trust comes into effect, including taxes generated by this Trust and/or taxes generated by the Estate under the Plan; (b) Administrative Expense Claim(s) held by a trade vendor, which administrative liability was incurred by Linett or the Trust in the ordinary course of business between Linett and/or the Trust and such creditor on or after September 30, 2019 and prior to the Effective Date; or (c) fees of the United States Trustee arising under 28 U.S.C. § 1930 allocable to periods on or after September 30, 2019. All Claims described in clause (a), (b) and (c) of the immediately preceding sentence not paid by the Estate in the ordinary course of business shall be paid by the Trust in the ordinary course of business from the proceeds of the operation or liquidation of the Trust Assets.

6

(b) "Fee Claims" shall mean any right to payment constituting a cost or expense of administration of the Bankruptcy and allowed under 11 USC §§ 330 or 503 of the Bankruptcy Code and approved by the Bankruptcy Court. To the extent allowed by the Bankruptcy Code, Fee Claims shall be paid from the Net Distributable Assets. Administrative Expense Claims and Fee Claims are identified in the Plan as Unclassified Claims. The Unclassified Claims include Fee Claims of the Smaha Law Group, APC, Squar Milner (now known as Baker Tilly) and other Professionals that may have incurred fees against the Estate. Smaha Law Group, APC and Squar Milner/Baker Tilly have agreed to accept payment in the ordinary course as Net Distributable Assets become available after the Effective Date of the Plan to assist the Estate in complying with the requirements of 11 USC § 1129. The Law Office of Thomas Gorrill may also submit a Fee Claim under 11 USC § 503 and seek to be treated as an Administrative Claim. Any and all Fee Claims, except the US Trustee's fees, are subject to Bankruptcy Court approval and any application objection process before becoming Allowed Claims.

### 5.2.2  Priority Tax Claims:

(i) Priority Claims are made up of the California Franchise Tax Board's claim for $3,320.65 (Proof of Claim No. 1) and the claims of the Internal Revenue Service (the "IRS") for $10,829.04 (Proof of Claim No. 3, amended). The total Priority Claims are in the amount of $14,149.69, plus interest accruing at the statutory rates provided for under California law and Federal law, respectively.

(ii) Priority Claims are to be paid from Net Distributable Assets after Fee Claims and Administrative Expense Claims are paid in full and must be paid within five (5) years of the Petition Date. Priority Claims are to be unimpaired by the Plan and are not entitled to vote.

### 5.3  SECURED CLAIMS

5.3.1  **Claims secured by the Residence**. To secured creditors, identified as Class 1 Claims in the Plan, holding allowed claims on the Residence, they shall be paid as follows:

(i) Upon the sale or refinance by the Trustee of the Residence, the Secured Claim of Banco Popular North America, currently serviced by PHH Mortgage Corporation, which is asserted as a secured claim in first position against the Residence, reflected by a first deed of trust in the amount, provided in Proof of Claim 6, of $1,329,291.56 plus additional amounts accrued during the pendency of the Bankruptcy, minus payments made during the Bankruptcy and allowed under the Mortgage and Deed of Trust entered into between Opus Bank, as Banco Popular North America's predecessor

7

in interest, on the one hand and Barbara Linett and Dana Linett as Joint Tenants on the other (the "Banco Popular Secured Claim – 1st Position" and/or "Class 1A") shall be paid in full from the net proceeds of the sale after costs of sale are paid.

(ii)     Upon the sale or refinance by the Trustee of the Residence, the Secured Claim of U.S. Bank Home Mortgage, a division of U.S. Bank National Association which is asserted as a secured claim in second position against the Residence, reflected by a second deed of trust in the amount of $493,443.09. as reflected on Proof of Claim 7, minus post-petition payments made, plus post-petition payments not made under a forbearance agreement and allowed under the U.S. Bank Private Select Home Equity Credit Line Agreement and Deed of Trust entered into between U.S. Bank National Association on the one hand and Barbara Linett and Dana Linett on the other (the "U.S. Bank Secured Claim – 2nd Position" and/or "Class 1B") shall be paid in full after costs of sale are paid and after the Class 1A is paid in full.

(iii)    Upon the sale or refinance by the Trustee of the Residence, the Secured Claim of Beatrice L. Snider, APC which is asserted as a secured claim in third position against the Residence, reflected by a FLARPL lien in the amount of $301,589.04, as provided in Proof of Claim No. 13, as between the Law Offices of Beatrice L. Snider, APC and Barbara Linett (the "Snider Secured Claim – 3rd Position" and/or "Class 1C") shall be paid in full, plus accrued and unpaid interest as an oversecured creditor at 5% interest from the Petition Date to the time of payment, if funds suffice, after costs of sale are paid and after Class 1A and Class 1B Claims are paid in full. Any payment on Claim 13 will be credited against the claim of Barbara Linett (Claim 11).

(iv)    Upon the sale or refinance by the Trustee of the Residence, the Secured Claim of Barbara Linett, reflected in part by a recorded Abstract of Judgment recorded on January 23, 2017, against the Residence in the amount of $884,054.79 as included as part of the Proof of Claim No. 11 in the sum of $3,034,967.71, minus the payment made to Beatrice L. Snider, APC provided for above (the "Barbara Linett Secured Claim – 4th Position" and/or "Class 1D") shall be paid in full, plus accrued and unpaid interest as an oversecured creditor at 5% interest from the Petition Date to the time of payment, after costs of sale are paid and after Class 1A, Class 1B, and Class 1C, Claims are paid in full. The payment of the Class 1D Claim to Barbara Linett will reduce any other claims of Barbara Linett provided for herein. In addition, any payment made to Barbara Linett on her other claims provided for herein may reduce the payment due on the Class 1D Claim as set forth below.

8

Linett scheduled a homestead exemption claim of $175,000 against the Residence. The homestead exemption shall remain in that amount unless, prior to the date of sale or refinance of the Residence, the state of California or a competent court of law establishes a different amount or finds that the amount provided for under CCP Section 704.730 should be applied retroactively to a date that is on or before the Petition Date. The amount, priority and payment of the homestead exemption, including any claims for surcharge or offset, if any, and any defenses to any such claims, shall be determined by the Court prior to the confirmation of the Plan.

5.3.2 **Claims secured by personal property** - To secured creditors, identified as Class 1 Claims in the Plan, holding allowed claims on personal property, they shall be paid as follows:

(i)      The Secured Claim of U.S. Bank National Association which is asserted as a secured claim in first position against the Estate's personal property, including all business inventory, under that certain Demand Line of Credit Note, Demand Line of Credit Agreement and Business Security Agreement as between U.S. Bank National Association and Linett (the "U.S. Bank Secured Claim – Personal Property" and/or "Class 1E") will be confirmed by separate stipulation as between the Debtor, U.S. Bank, and Barbara Linett, as to the amount, priority and secured status of the Class 1E Claim and said stipulation will be incorporated into the order confirming the Plan.

Notwithstanding anything to the contrary provided herein, the net proceeds, after costs of sale and taxes, of any of the items in the Ford Collection may not be used to pay any operating expense of the Trust, Trustee's Fees, or any other class of creditors of the Estate, unless and until the Secured Claim of U.S. Bank (Class 1E) on the Ford Collection has been paid in full as provided herein above, including any accrued interest at the contractual rate after the Petition Date to the time of payment, plus any costs and expenses allowed under the loan documents for the U.S. Bank Secured Claim – Personal Property. In this regard, the Trustee shall use his reasonable discretion to sell enough of the Ford Collection to pay the Class 1E Claim in full, including interest, attorneys' fees and costs as an oversecured creditor as previously provided herein, during the initial thirty-six (36) months of the Plan.

The net proceeds, after costs of sale and taxes, of the sale of any other non-Ford Collection items of personal property or proceeds received by the Trust as a settlement, or prosecution, of any claims of the Estate may be used by the Trustee to pay any and all costs of administration of the Trust, which do not include any pre-confirmation administrative expenses of the Estate. If, after paying such administrative expenses of the Trust, the Trustee determines to commence making any distribution to any class of

9

creditors of the Estate from the proceeds of the personal property, non-Ford Collection items, then at the time of any such distribution, if the Class 1E Claim has not yet been paid in full, then 85% of any such distribution shall be paid towards the Class 1E Claim until it is paid in full and the remainder may be used to pay claims in all other classes, including Barbara Linett's support payments, except for General Unsecured Creditors (Class 2). Once all of such other classes, including outstanding support payments, Chapter 11 Administrative Claims and Priority Tax Claims, have been paid in full, then 100% of the intended distribution shall be paid to the Class 1E Claim until it is paid in full. Only after the Class 1E claim has been paid in full (including interest, attorney's fees and costs as an oversecured creditor), may the Trustee then commence distributions to Class 2 from the sale of non-Ford Collection items.

(ii) Upon the sale of personal property identified in the Plan as the Ford Collection and after any payment of the Class 1E Claim from the sale of the Ford Collection, as provided above, the Secured Claim of Barbara Linett which is asserted as a secured claim in second position against the Ford Collection in the amount of $3,034,967.71 pursuant to Proof of Claim No. 11 (the "Barbara Linett Secured Claim – Ford Collection" and/or "Class 1F"), minus payments made to the Class 1D Claim, will receive payments up to the full amount of the Class 1F claim minus the payments made to the Class 1D Claim plus accrued and unpaid interest at 5% per annum and attorneys' fees and costs to the extent she is an oversecured creditor.

## 5.4 GENERAL UNSECURED CLAIMS
5.4.1 General Unsecured Claims (Class 2 under the Plan):

(i) General Unsecured Creditors are made up of all other creditors holding Allowed Claims not previously mentioned that have either filed claims or were included as undisputed creditors, with the exception of Squar Milner which voluntarily waived its pre-petition claim in order to continue providing post-petition services to the Estate. Any amounts continuing to be owed to Barbara Linett on account of any deficiency in her secured claims will be included in Class 2 General Unsecured Claims.

(ii) General Unsecured Claims are to be paid after Secured Claims, Fee Claims, Administrative Expense Claims and Priority Claims are paid in full. Payments to Class 2 General Unsecured Claims will continue on a pro rata distribution basis until they are paid in full, without interest.

10

5.5    REVERSIONARY INTEREST

5.5.1  Linett's Reversionary Interest (Class 3 under the Plan):

      (i)    To the extent that all costs of administration, taxes and the Allowed Claims of all creditors are paid in full, the residual of the Trust Assets thereafter, if any, shall revert to Linett free of the Trust.

      (ii)    Linett shall be entitled to a reversionary interest in the following Trust Assets:

      (A)    All Trust Assets abandoned by the Trust; and

      (B)    Any residual amounts or Trust Assets held by the Trust after the payment in full of all Administrative Expense Claims, Priority Claims, Tax Claims, Secured Claims against any personal property of Linett and General Unsecured Claims.

5.6    Uncashed Distributions: In the event any check representing a distribution under the terms of this Trust agreement to a creditor of the Trustor is returned to the Trustee as undeliverable, or remains uncashed by the creditor for a period of 90 days after being mailed to such creditor at the creditor's last known address, and the Trustee, after reasonable efforts to locate the creditor, is unable to locate the creditor, the Trustee may cancel the check representing such distribution and distribute such funds to the remaining creditors of the Trust, and make no further distributions to the omitted creditor unless such creditor obtains an order of the Bankruptcy Court to be reinstated as a creditor beneficiary.

5.7 Claims.    The Trustee shall continue the claims objection process previously handled through the Bankruptcy. Claims notices were previously sent out as required by applicable law. The Trustee shall attempt to determine amounts received or invested from creditors, amounts previously paid to creditors as principal and amounts accountable to interest or profit distributions. Trustee is authorized to hire accountants and other professionals as a cost and expense of this Trust to assist in such determination and to prepare Trust tax returns. Trustee reserves the right to object to any claims presented on any legal basis therefore. Trustee is authorized to pursue all actions, if applicable or available under applicable law, for preferences or fraudulent conveyances. Linett shall individually and through his employees reasonably assist the Trustee in: 1) locating assets; 2) prosecuting the Trustor's Claims; and 3) assist in determining the actual amounts owed to the creditor beneficiaries hereof.

11

SECTION 6: TRUSTEE'S POWERS.

6.1    Powers of Trustee.    The Trustee owes a fiduciary duty to the Debtor's creditors, who are beneficiaries of the Trust. To carry out the purposes of each Trust established hereunder and subject to any limitations stated elsewhere herein, the Trustee is vested with the following powers, in addition to those now or hereafter conferred by law or the Bankruptcy Court:

6.1.1    To manage, control, sell (for cash or on deferred payments), convey, exchange, partition, divide, improve and repair Trust Assets. In accordance with the Plan, the Trustee has the discretion to make monthly payments as funds are available as adequate protection, for use of cash collateral, or otherwise as allowed by the Bankruptcy Court or by stipulation, to secured creditors on an ongoing basis in order to protect the applicable Trust Assets prior to liquidation.

6.1.2    To collect and receive any accounts receivables, income, proceeds of sales and distributions derived from or relating to the Trust Assets and to distribute the same to the creditors in accordance with the terms of this Agreement.

6.1.3    To lease Trust Assets for terms within the term of the Trust.

6.1.4    Subject to Bankruptcy Court approval, to borrow money for any Trust purpose and from any source, including the Trustee, and to convey in trust, mortgage, pledge or otherwise encumber the Trust Assets, or any part thereof, as security therefor.

6.1.5    To carry, at the expense of the Trust, insurance of such kinds and in such amounts as the Trustee deems advisable to protect the Trust Assets and the Trustee against any hazard.

6.1.6    To commence or defend such litigation with respect to the Trust or any property of the Trust as the Trustee may deem advisable, at the expense of the Trust, including any actions under Sections 363, 365 and 501 to 558, inclusive of the Bankruptcy Code.

6.1.7    To compromise or otherwise adjust any claims or litigation against or in favor of the Trust, subject to Bankruptcy Court approval.

6.1.8    To pay any and all necessary expenses attributable or relating to the management, maintenance, administration, preservation or liquidation of Trust Assets, including the employment of professionals and others as provided herein below.

12

6.1.9  To invest and reinvest the Trust Assets in every kind of investment consistent with the Trustee's duty to maximize the net distribution of liquidation proceeds to creditors.

6.1.10 With respect to any securities held in the Trust, to have all the rights, powers and privileges of an owner, including, but not by way of limitation, the power to vote, give proxies and pay assessments, to participate in voting trusts, pooling agreements, foreclosures, reorganizations, consolidations, mergers, liquidations, sales and leases, and incident to such participation, to deposit securities with and transfer title to any protective or other committee on such terms as the Trustee may deem advisable; and to exercise or sell stock subscription or conversion rights.

6.1.11 To appoint, employ and pay such agents and employees as the Trustee deems necessary or advisable, including (without limiting the generality of the foregoing) accountants, attorneys, investment counselors, liquidating agents and custodians of the Trust property.

6.1.12 To hold securities or other property in the Trustee's own name as the Trustee hereof without disclosing any fiduciary relation.

6.1.13  To incur and pay all taxes, assessments, costs, charges, fees and other expenses of every kind in connection with the administration of the Trust hereby created, including any taxes generated against the Linett bankruptcy estate by reason of the sale of any Asset of the Estate.

6.1.14  Upon any division or partial or final distribution of the Trust Assets, to partition, allow and distribute the Trust Assets in undivided interests or in kind, or partly in money and partly in kind, at valuations determined by the Trustee, and to sell such property as the Trustee may deem necessary to make division or distribution.  Any distribution of an Asset to any creditor in kind shall be subject to Bankruptcy Court approval.

6.1.15  Except as otherwise specifically provided herein, the Trustee shall have the power, exercisable in the Trustee's discretion, to determine what is principal or income of the Trust Assets and to apportion and allocate receipts and expenses and other charges between these accounts; except insofar as the Trustee shall exercise this discretion, and except as otherwise provided in this instrument, matters relating to principal and income shall be governed by the provisions of the California Principal and Income Law from time to time existing.

13

6.1.16  The Trustee shall provide quarterly reports of information about the assets, liabilities, receipts and disbursements of the Trust, the acts of the Trustee, and the particulars relating to the administration of the Trust.  The quarterly reports shall contain that information required by the United States Trustee for operating reports submitted on a post-chapter 11 confirmation basis.

6.1.17 Trustee may require creditors to execute such documents as Trustee deems reasonably necessary to assure their acceptance of the provisions hereof, including but not limited to: pro rata distributions, delayed payment, claims calculation procedures and covenants not to sue or take other actions which would interfere with the Trust's ability to liquidate Trust Assets or obtain continued cooperation from Linett and his employees and other representatives, if any.

6.1.18 To enter into general releases with any party or person which shall be binding on the Trust and the creditors of the Trust.  Such determination shall be subject to the approval of the Bankruptcy Court.

6.1.19   The Trustee of the Trust may conduct banking activities and write checks and make deposits, withdrawals, and endorsements.

6.2     Additional Powers of Trustee.  The enumeration of certain powers of the Trustee shall not limit its general or implied powers, and the Trustee, subject always to the discharge of its fiduciary obligations, is vested with and shall have all rights, powers and privileges which an absolute owner of the same property would have.

6.3.    Limitations on the Authority Discretion and Powers of the Trustee.

6.3.1   Transfer Property for Less than Adequate Consideration.  The Trustee shall not permit or enable Trustor or any other person acting as a Liquidating Agent to sell, purchase, exchange or otherwise deal with or dispose of any trust property, corpus or income, for less than fair and adequate consideration in money or money's worth.

6.3.2   Exercise Powers in Nonfiduciary Capacity.  The Trustee shall not permit or enable any person not a Trustee of the Trust to exercise any of the Trustee's powers in a nonfiduciary capacity.  Specifically, the Trustee shall not permit any person not a Trustee to exercise any of the following powers: (i) to substitute Trust property with other property of an equivalent value; (ii) to control or direct the investment of trust funds, or to veto investments or reinvestments, to the extent that the trust funds consist of stocks or securities of corporations in which the Trust's holdings and that of the Trust are significant from the viewpoint of voting control; and (iii) vote or direct the voting of stock

14

or other securities of any corporation in which the Trust's holdings are significant from the viewpoint of voting control, provided that such restrictions shall not prevent the Trustee from exercising any of such power in the Trustee's capacity as Trustee.

## SECTION 7:  GENERAL PROVISIONS.

7.1    Notice of Right of Payment.  All claims shall be verified by Trustee as being Allowed Claims before distributions are made to such creditors.  Allowance shall be determined pursuant to the Bankruptcy Code.

7.2    Discretion Regarding Expenses of Administration.  The Trustee shall pay out of principal or income as the Trustee may elect, or partly out of each, in such shares as the Trustee may determine the costs and other expenses incurred in the administration or protection of this Trust.  Attorneys/Trustees fees and the payment of other Professionals must be done only after application and Bankruptcy Court approval. If the Trustee requires Debtor's or Barbara Linett's counsel to provide orientation assistance to the Trustee and/or the Trust at the commencement of the Trust, the Trustee will compensate counsel for such services, subject to application and Bankruptcy Court Approval.  The discretion of the Trustee to pay these items from income or principal, or partly from each, may be exercised not only in the interest of the Trust but for the benefit of any creditor of the Estate.  Income remaining after such expenditures as the Trustee shall elect to pay therefrom, shall constitute net income.

## SECTION 8:  PROVISIONS RELATING TO TRUSTEE.

8.1    Power to Appoint Trustee to Fill Vacancy.  If a vacancy in the office of the Trustee occurs, unless the Trustee has designated his successor and Linett and Barbara Linett have consented to the same, the Bankruptcy Court retains the power to designate a successor corporate or individual Trustee or co-Trustees, or a succession of successor Trustees (whether corporate or individual and whether designated to act as co-Trustees or sole Trustee) to fill the vacancy in the office of the Trustee.  If a successor Trustee cannot be agreed upon, Linett and/or Barbara Linett may propose a successor Trustee to the Bankruptcy Court for approval through a noticed motion on shortened time, provided however notwithstanding any such motion, the Bankruptcy Court may appoint any person or entity to act as the successor Trustee.

8.2    Appointment and Characteristics of Successor Trustee.  A designation of a successor Trustee, whether an individual, a corporation, or a combination thereof, pursuant to an exercise of any power granted by this section shall be made by a written instrument executed by the individual authorized to exercise said power and delivered to each person

15

or entity designated as a successor Trustee or co-Trustee and to each person or entity designated to ratify or otherwise approve such appointment. Any corporate Trustee designated pursuant to an exercise of power granted by this section shall be an individual, trust company or bank authorized to transact trust business.

8.3    Right to Resign. Any Trustee shall have the right to resign at any time by 30 days written notice directed to the Trustor, Barbara Linett and the Bankruptcy Court.

8.4    Removal of Trustee and Powers. On application made and for good cause shown the Bankruptcy Court may do any of the following:

A.  Remove and replace the Trustee;

B.  Limited or expand the powers of the Trustee;

C.  Appoint a Co-Trustee; or

D.  Appoint an examiner with such powers as the Bankruptcy Court deems appropriate or necessary under the circumstances presented.

8.5    Termination of Trust. The Trust shall terminate following the distribution of all Trust Assets to creditors and/or by reversion of any remaining Trust Assets to the Debtor, the winding up of its affairs and the discharge of the Trustee by order to the Bankruptcy Court.

8.6    Successor Trustee Powers. Every successor Trustee shall have all the powers given the originally named Trustee. No successor Trustee shall be personally liable for any act or omission of any predecessor. The liability of a successor Trustee for a breach of trust committed by a predecessor Trustee shall be governed by California law as it may exist from time to time.

8.7    Trustee's Compensation and Disclosure. Thomas Hebrank as the Trustee hereunder shall be entitled to compensation for services at a rate of $350 per hour and to reimbursement for any expenses incurred in the performance of the Trustee's duties. Trustee shall be entitled to reimburse any fees expended by individual creditors which substantially resulted in the execution hereof or otherwise benefit in the recovery of a significant asset for the Trust. Payment of any such compensation shall be subject to application and Bankruptcy Court approval. The compensation rate of any successor Trustee shall be determined by the Bankruptcy Court.

16

SECTION 9:  CONSTRUCTION OF TRUST.

   9.1   Notices

      9.1.1  For purposes hereof, all notices to the Trustee shall be made at the following addresses:

Thomas C. Hebrank
501 West Broadway, Suite 290
San Diego, CA. 92101

      9.1.2  For purposes hereof, all notices to the Trustor and to Barbara Linett shall be made at the following addresses:

|  | With a Copy to: |
|---|---|
| Dana Linett<br>PO Box 3507<br>Rancho Santa Fe CA 92067 | John L. Smaha<br>Smaha Law Group, APC<br>2398 San Diego Avenue<br>San Diego CA 92110<br>619-688-1557 |
| Barbara Linett<br>P.O. Box 3035<br>Del Mar, CA 92014 | Thomas Gorrill<br>401 West A Street, Suite 1770<br>San Diego, CA 92101<br>619-237-8889 |

      In the event of any change of address, the affected party shall file a notice thereof with the Bankruptcy Court and serve the same upon the parties hereto and all creditors and parties of interest of the Estate.

   9.2   Significance of Headings.  Titles and headings contained herein are used for ease of reference only and shall not be deemed to govern, limit, modify or in any manner affect the scope, meaning or intent of the provisions herein.

   9.3   California Law Applicable.  Unless otherwise expressly provided, the meaning of the distributive provisions of this instrument shall be governed by the laws of the State of California in effect on the date of its execution.  To the extent permissible under applicable law, the validity of the provisions of this Trust agreement shall be governed by the laws of the State of California in effect on the same date, unless invalidity

17

can be avoided by applying the law in effect at another time or in another jurisdiction that has sufficient contact for this purpose with the Trust or Trusts involved. If any provision of this instrument is invalid, the remaining provisions shall nevertheless be given effect. Any action brought with respect to this Trust shall solely be brought in the Bankruptcy Court unless the Bankruptcy Court has deferred the issue presented to another court of competent jurisdiction

9.4    <u>Severability and Savings Clause.</u>    If any provision hereof is either not enforceable under applicable law or would otherwise subject this Trust to claims of creditors of Linett that are not otherwise provided for herein then the Trustee may within his discretion disregard any such provision(s) and such provision(s) shall be severed from the remaining provisions hereof and given no legal effect. The remaining paragraphs of the Trust will thereafter remain operative and this Trust will continue in accordance with such remaining provisions.

The Trustor and Trustee have executed this Trust Agreement on the day and year first above written.

Dana Linett, Trustor

_____
Dana Linett, individually and as
Debtor-In-Possession

Barbara Linett

_____
Barbara Linett, individually

Appointment Accepted,

Date:    _____
Thomas C. Hebrank
Trustee

115.Trust.Agreement.Linett.docx

18

Schedule A
List of Creditors

| Creditor | Type of Claim | Amount Claimed |
|---|---|---|
| Barbara Linett<br>P.O. Box 3035<br>Del Mar, CA. 92014 | Secured | $3,034,967.71* + |
| Beatrice L. Snider<br>9663 Tierra Grande, Suite 301<br>San Diego, CA. 92126 | Secured | $  301,589.04* |
| Banco Popular North America<br>c/o PHH Mortgage Corporation<br>Attn:  Bankruptcy Department<br>P.O. Box 24605<br>West Palm Beach, FL 33416 | Secured | $1,329,291.56* |
| U.S. Bank Home Mortgage<br>4801 Frederica Street<br>Owensboro, KY 42301 | Secured | $  493,443.09* |
| U.S. Bank National Association<br>c/o Jeff Legore<br>17851 North 85th Street<br>Suite 100-140<br>Scottsdale, AZ 85255-6310<br>LM-AZ-HMTO | Secured | $  251,489.58* |
| Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101 | Priority | $    10,829.04* |
| California Franchise Tax Board<br>P.O. Box 2952<br>Sacramento, CA. 95812 | Priority | $      3,320.65* |
| Bank of America<br>P.O. Box 15019<br>Wilmington, DE 19886 | Unsecured | $    60,367.83 |

19

| | | |
|---|---|---|
| Citi Advantage<br>P.O. Box 78045<br>Phoenix, AZ 85062 | Unsecured | $  86,401.52 |
| Citi Bank – Costco<br>P.O. Box 78019<br>Phoenix, AZ 85062 | Unsecured | $  73,602.70 |
| Deborah Linett<br>56 Krystal Drive<br>Somers, N.Y. 10589 | Unsecured | $ 321,629.31 |
| California Franchise Tax Board<br>P.O. Box 2952<br>Sacramento, CA. 95812 | Unsecured | $    968.38 |
| Internal Revenue Service<br>P.O. Box 7346<br>Philadelphia, PA 19101 | Unsecured | $   4,804.90 |
| JPMorgan Chase Bank<br>P.O. Box 6294<br>Hoffman Estates, IL 60179 | Unsecured | $  62,598.28 |
| Julia M. Garwood<br>1450 Frazee Road, Suite 501<br>San Diego, CA. 92108 | Unsecured | $ 200,533.87* + |
| Linda Cianciolo<br>3955 Falcon Street<br>San Diego, CA. 92103 | Unsecured | $   3,000.00 # |
| Linda Papst DeLeon<br>5330 Carroll Canyon Road, Ste. 250<br>San Diego, CA. 92121 | Unsecured | $ 108.685.68 # |
| Stephen Temko<br>12636 High Bluff Drive, Suite 200<br>San Diego, CA. 92130 | Unsecured | $   4,723.00 |
| U.S. Bank NA<br>P.O. Box 790408<br>St. Louis, MO 63179 | Unsecured | $  20,798.18 |

20

| | | |
|---|---|---|
| U.S. Bank NA<br>P.O. Box 790408<br>St. Louis, MO 63179 | Unsecured | $ 12,978.00 |
| U.S. Bank NA<br>P.O. Box 5229<br>Cincinnati, OH 45201 | Unsecured | $ 17,531.12 |
| U.S. Bank NA<br>P.O. Box 790408<br>St. Louis, MO 63179 | Unsecured | $  2,440.20 |
| U.S. Bank NA<br>P.O. Box 5229<br>Cincinnati, OH 45201 | Unsecured | $ 47,332.29 |

\*        Claims may include additional amounts for post-petition interest, costs and other amounts allowed as oversecured creditors.  Claims may also need to be adjusted for payments made post-petition.  Except as otherwise provided herein, the Trustee retains all rights and defenses as to any such claimed amounts.

+        Claims have been objected to and are subject to set-offs and/or reductions.

#        Claims are likely to be objected to and may be subject to set-off and/or reductions.

21

Schedule B
List of Assets

A.    Funds held in Debtor-In-Possession Accounts:
    1. U.S. Bank – 4446
    2. U.S. Bank – 4453
    3. U.S. Bank – 4461
    4. Wells Fargo – 1670

B.    Accounts Receivables Due From EAHA, Inc.

C.    All pre-petition Early American Numismatics Inventory.

D.    All post-petition Early American Numismatics Inventory.

E.    Dana Linett's Personal Collections of Numismatics, Collectable Currency, Artwork, and Americana wherever held.

F.    John Ford Collection held at Chase Bank.

G.    Rancho Santa Fe Residence

H.    1964 Ford Mustang

I.    1997 Straus 22-foot boat

J.    2013 Chevy Malibu

K.    2014 Craftsman 24-hp Mower

L.    Potential recovery/set off against Julia M. Garwood and/or Julia M. Garwood, a Professional Law Corporation

M.    Potential recovery/set off against Barbara Linett

N.    Potential recovery against son-in-law, Javier Santos

O.    Potential recovery against Debtor's other attorneys involved in the Divorce Action.

P.    Appellate claims arising from the Divorce Action.

22

Schedule C
Exempt and Excluded Assets

## Exempt Assets

A.   Homestead Exemption Claim of $175,000 in Rancho Santa Fe Residence  (CCP 704.730) subject to Court determination of priority and as to alleged claims for surcharge or offset, if any, as set forth in Section 5.3.1(v) above.

B.   2013 Chevrolet Suburban (CCP 704.010)

C.   Home appliances, furniture and decorations (CCP 704.020)

D.   TV's, Splitter and Amplifiers (CCP 704.020)

E.   Exemption claim of $8,725 in Debtor's Personal Collections of artwork, coins, currency, and Americana (CCP 704.040)

F.   Men's Clothing, watch and cufflinks (CCP 704.020)

G.   SEP/IRA: TD AmeriTrade Account (CCP 704.155(a)(1), (2)(b)

H.   Office Furniture, Computers and supplies (CCP 704.060)

## Excluded Assets

A.   EAHA, Inc. (Zero value without Linett)

B.   Evolutionary Energy Solutions, LLC (Zero Value)

C.   Logical Solar, LLC (Zero Value)

D.   Any assets listed above as Exempt Assets or Exemption Claims

E.   The trade name "Early American Numismatics"

F.   Debtor's Social Security Benefits

23

Schedule D
Claims Against Third Parties

1.  Action pending Against Barbara Linett;
2.  Objection to Claim against Julia M. Garwood and/or Julia M. Garwood, a Professional Law Corporation;
3.  Pending Superior Court Action against Julia M. Garwood and Julia M. Garwood, a Professional Law Corporation;
4.  Pending Appeal in the Divorce Action between Dana Linett and Barbara Linett;
5.  Potential Claims against son-in-law Javier Santos;
6.  Potential claims against Linda Papst DeLeon for malpractice;
7.  Potential claims against Linda Cianciolo for malpractice;
8.  Accounts receivable and promissory notes

24

Schedule E

Assets or Claims Requiring Bankruptcy Court Approval to Sell or Settle

A. Rancho Santa Fe Residence. The sale or refinance of the residence is subject to overbid procedures proposed by the Trustee and set by the Court. Anyone, including Linett, may submit an overbid.

B. 1787 FUGIO Cent Newman 1-CC and 1739 HIGLEY COPPER. - When liquidating these 2 coins through auction, the Trustee will consult his liquidating agent and set a reserve price for each of these coins. The Trustee will notify Linett's counsel of the proposed reserve prices. If Linett believes the reserve price is too low, then Linett and the Trustee will submit sealed pleadings with any evidence they have in support of their proposed reserve prices for each of those coins, and the Court will determine the reserve price. If the sale of either coin is by direct sale (i.e., not by auction), the sale shall be subject to Court approval unless Linett and Barbara Linett consent to the sale price.

25